**Dan LANDY, Plaintiff,**

v.

**Don IRIZARRY, Daniel Lafferty, and Sam Chimon, Defendants.**

No. 92 Civ. 6045 (KMW).

United States District Court,
S.D. New York.

April 5, 1995.

Don Landy, Ossining, NY, pro se.

Peter D. Winebrake, Asst. Corp. Counsel, Paul A. Crotty, Corp. Counsel, New York City, for defendants.

## ORDER

**KIMBA M. WOOD, District Judge.**

▇▇▇ Defendants Irizarry and Lafferty have filed a motion for summary judgment in this § 1983 action, and plaintiff has filed a cross-motion for summary judgment. Defendant Chimon has not been served with process and has not answered or otherwise appeared. In a Report and Recommendation ("Report") dated July 27, 1994, Magistrate Judge Katz recommended that plaintiff's cross-motion be denied, that defendants' motion be granted, and that the complaint be dismissed without prejudice as to defendant Chimon. Plaintiff filed objections on September 7, 1994.

After a *de novo* review of the Report and plaintiff's objections, I adopt the Report in its entirety. The complaint is hereby dismissed without prejudice as to defendant Chimon.

SO ORDERED.

## REPORT AND RECOMMENDATION

**KATZ, United States Magistrate Judge.**

▇▇ This Section 1983 action was referred to me for all pretrial purposes, including dispositive motions. Plaintiff *pro se* claims that he was unlawfully arrested, that excessive force was used in the course of his arrest, and that he was denied necessary medical treatment for injuries he suffered during the arrest. Plaintiff seeks damages for his physical injuries and the pain and suffering alleged to have resulted from denial of medical treatment. (Complaint ¶ V.) Defendants Irizarry and Lafferty have filed a Motion for Summary Judgment and Plaintiff has filed a Cross–Motion for Summary Judgment.[1] Defendant Chimon has never been served with process and has not answered or

---

1. Defendants have treated Plaintiff's submissions as simply a response in opposition to their motion rather than as a Cross–Motion for Summary Judgment. The better view is to treat them as both a response and a Cross–Motion, as it is clear on their face that they were intended as both and they do in fact satisfy both purposes.

otherwise appeared in the action. For the reasons set forth below, I recommend that Plaintiff's Cross–Motion be denied and Defendants' Motion be granted, and that the Complaint be dismissed without prejudice as to Defendant Chimon.

### BACKGROUND

This action arises out of events surrounding Plaintiff's arrest on October 26, 1990. In the early evening of that day, Plaintiff entered an apartment building at 120 West 70th Street, New York, New York. (Pl.'s Dep. at 58.) [2] There he encountered a resident, Elise Cohen, on an upper floor. (Pl.'s Dep. at 65–66.) Ms. Cohen started screaming loudly for help, and Plaintiff descended the staircase. (Pl.'s Dep. at 65–66; Irizarry Decl. ¶ 2.) The screams alerted several tenants who opened their doors to see what was afoot. (Pl.'s Dep. at 66; Irizarry Decl. ¶ 2.) One of these tenants was off-duty New York City Police Lieutenant Dorian Irizarry. Lieutenant Irizarry saw Plaintiff walking down the stairs, and he asked Plaintiff what was going on. (*Id.*) Plaintiff replied, "I don't know." (*Id.*) Irizarry then asked Plaintiff to wait a minute, to which Plaintiff reacted by "trotting" to the door. (Pl.'s Dep. at 67, 78; Irizarry Decl. ¶ 2.) Irizarry contends that he then yelled, "Police, don't move." (Irizarry Decl. ¶ 3.) Plaintiff claims that Irizarry did not identify himself as an officer until later.[3] Irizarry also claims that

two tenants came running down the stairs and said words to the effect of "stop him, he attacked Elise." [4] (Irizarry Decl. ¶ 3.) Irizarry then attempted physically to restrain Plaintiff from leaving the building. Irizarry claims he tried to block the door; Plaintiff claims Irizarry grabbed him from behind. (Pl.'s Dep. at 78–79, 81; Irizarry Decl. ¶ 3.)

A struggle ensued, spilling out onto the sidewalk. (Pl.'s Dep. at 83–89; Irizarry Decl. ¶ 5.) At least one of the other tenants came to help Irizarry in the struggle.[5] According to Plaintiff, Irizarry was trying to handcuff him as they struggled on the ground. Irizarry told him he was going to jail. (Pl.'s Dep. at 88, 148–149.)

During the struggle, Irizarry noticed that Plaintiff had what appeared to be a gun. (Pl.'s Dep. at 116; Irizarry Decl. ¶ 5.) Plaintiff concedes that he was in possession of a knife shaped like a gun. (Pl.'s Dep. at 116.) After seeing this weapon, Irizarry told the other person(s) to get off of Plaintiff; when they complied, Plaintiff started to get up. (Pl.'s Dep. at 83, 85–88; Irizarry Decl. ¶ 5.)

Irizarry then drew his revolver and pointed it at Plaintiff, ordering him to drop his weapon. (Irizarry Decl. ¶ 5.) Plaintiff claims Irizarry "shoved" or "jammed" the revolver into the back of his head. (Complaint ¶ IV.A; Pl.'s Dep. at 149.) Plaintiff grabbed the gun, pushed it away, stood up,

---

2. References will be to the transcript of Plaintiff's Deposition held August 10, 1993, annexed to the Declaration of Assistant Corporation Counsel Jyll D. Townes as Exhibit "1" ("Pl.'s Dep."); to the Declaration of Lieutenant Dorian Irizarry, dated October 27, 1993, ("Irizarry Decl."); to the Declaration of Dan Landy, dated November 17, 1993, ("Landy Decl."); to Plaintiff's Statement pursuant to Rule 3(g) of the Civil Rules ·of the Southern District of New York, ("Pl.'s 3(g) Statement"); to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Mem."); and to the Declaration of Assistant Corporation Counsel Peter D. Winebrake in Response to Plaintiff's Motion for Summary Judgment, dated November 29, 1993 ("Winebrake Decl.").

3. Plaintiff alleges that Irizarry did not identify himself until after they struggled and Plaintiff was running down the street. (Pl.'s Dep. at 149; Pl.'s Mem. ¶ 8.)

4. ·Although Plaintiff does not directly controvert this assertion, he questions whether Irizarry could have been told by other tenants that Ms. Cohen was in trouble or that Plaintiff attacked her if, as Ms. Cohen testified at Plaintiff's parole revocation hearing, she "ran up the stairs to her apartment, and lock[ed] the door, and call[ed] 911 and waited until the police came bec[a]use she was terrified." (Pl.'s Mem. at 3; Pl.'s 3(g) Statement ¶ 3–4; *see also* Pl.'s Mem. at 10.) Plaintiff's doubt in this respect is inconsistent with his deposition testimony in which he conceded that a tenant who came down to where he and Irizarry were, had been on the second floor speaking to the woman who was screaming. (Pl.'s Dep. at 81.)

5. Although Plaintiff claimed at his deposition that there was only one, (Pl.'s Dep. at 81, 83–89), in his declaration he indicates that more than one other tenant was involved in the struggle (Landy Decl. ¶ 3). Irizarry claims there were two. (Irizarry Decl. ¶¶ 3–5.)

and ran down 70th Street toward Broadway, where he turned the corner and entered a taxi. (Pl.'s Dep. at 85–88; Irizarry Decl. ¶¶ 5–6.) Plaintiff acknowledges that while he was running away Irizarry identified himself as a police officer. (Pl.'s Dep. at 149.) Irizarry pursued Plaintiff and ordered the taxi driver not to pull away. (Pl.'s Dep. at 95; Irizarry Decl. ¶ 6.) Irizarry states that he pulled Plaintiff out of the taxi and held him by a phone booth. (Irizarry Decl. ¶ 6.) Plaintiff claims the arrest took place in the taxi. (Pl.'s 3(g) Statement ¶ 6.)

Moments later, New York City Police Officer Daniel Lafferty appeared on the scene. (Pl.'s Dep. at 105; Irizarry Decl. ¶ 6.) After Irizarry told him what had happened, Lafferty took Plaintiff into custody and transported him to the 20th Precinct. (*Id.*) Later at the stationhouse, Ms. Cohen identified Plaintiff. (Pl.'s Dep. at 105; Irizarry Decl. ¶ 6.)

Plaintiff contends that he received a "hole in the head [that] wouldn't stop bleeding" from Irizarry "jamm[ing] the barrel of his gun behind his left ear." (Complaint ¶ IV.A.) He further claims he was sent to Bellevue Hospital for treatment the day after his arrest. (Pl.'s 3(g) Statement ¶ 7.) Plaintiff also contends that he was kicked by Officer Irizarry during the struggle. (Pl.'s Dep. at 83, 85, 87.) Defendant Irizarry denies that he either hit Plaintiff with his gun or kicked Plaintiff. (Irizarry Decl. ¶ 5.)

Because of his injuries, Plaintiff alleges that he asked police officials to be taken to a hospital for medical treatment, (Complaint ¶ IV), and he was told, at least twice, that he would receive medical care after his arraignment, which would be shortly (Pl.'s Dep. at 144–147). It is not clear when and to whom these requests were made. In his 3(g) Statement, Plaintiff stated Sam Chimon, supposedly a fellow officer with Lafferty at the 20th Precinct, failed to give him medical treatment. None of the other Defendants are specifically identified in the Complaint or Plaintiff's 3(g) Statement in connection with the alleged denial of Plaintiff's request for medical care.

Plaintiff was charged with the crimes of burglary in the first degree, an attempt to commit the crime of kidnapping in the second degree, and criminal possession of a weapon in the third degree (two counts). These charged were dismissed on April 14, 1992, pursuant to New York C.P.L. § 30.30, on the ground that Plaintiff had not been afforded a speedy trial. (Pl.'s Dep. at 24; *People v. Landy*, No. 13037/90, N.Y.S.Ct., Memorandum Decision (May 20, 1992)).

Plaintiff filed the Complaint in this action on August 11, 1992, naming as defendants Lieutenant Irizarry, Officer Lafferty, and Sam Chimon. Plaintiff claims that Lieutenant Irizarry used excessive force and unlawfully arrested him. Plaintiff also claims that Officer Lafferty conspired with Irizarry to unlawfully arrest him. Plaintiff alleges that Sam Chimon refused him medical treatment.

## DISCUSSION

### I. Failure to Serve Defendant Chimon

Defendants Lafferty and Irizarry were properly served and acknowledged receipt of the Summons and Complaint on September 25, 1992. Defendant Chimon, however, was not located by the U.S. Marshal's Service, which noted on the Process Receipt and Return that New York City Police Department personnel had no listing of him. In a letter to Plaintiff from the Court, dated September 10, 1992, Plaintiff was advised of the time limit for service, pursuant to then Rule 4(j), Fed.R.Civ.P., and that if service was not effected within the 120–day period, that I would recommend dismissal of the Complaint as to Defendant Chimon. In another letter, dated April 15, 1994, I specifically advised Plaintiff: (1) of his obligation under newly enacted Rule 4(m), Fed.R.Civ.P., to serve the Summons and Complaint within 120 days of the Complaint's filing, which would have been by December 9, 1992; (2) that the docket did not reflect that such service had occurred; and (3) that I would recommend to the district judge (Hon. Kimba M. Wood) that the action be dismissed as to Defendant Chimon if Plaintiff did not show good cause by May 6, 1994 for the failure of service. Plaintiff responded to that letter with an Affidavit, dated May 3, 1994, stating that "Sam Chimon McCio" worked at the 20th Precinct and he had not failed to serve him.

Plaintiff attached to his Affidavit an otherwise blank piece of paper containing three photocopied signatures which Plaintiff claims "show[s] that each defendant knew one another, and knew about the acts that they have committed against the Plaintiff." [6] Plaintiff did not produce any proof of service of the Summons and Complaint upon Defendant Chimon and the docket does not evidence that service was effected.

Rule 4(m), Fed.R.Civ.P., which took effect on December 1, 1993, retained much of the language of former Rule 4(j), particularly as it relates to a party's having to show "good cause" for the failure to serve the Summons and Complaint within 120 days of filing. However, in contrast to the former rule, it is explicit that where a party does show "good cause" for his failure, the Court must extend the time for service for an appropriate period. If "good cause" is not shown, the Court may either dismiss the action or order that service be effected within a specified period of time.[7]

■ Where, as in this action, Plaintiff is proceeding *pro se in forma pauperis* and has been forced to depend upon the U.S. Marshals for execution of service, care must be taken not to penalize him for the failings of the U.S. Marshal. *See Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986); *Korkala v. National Sec. Agency/Cent. Sec. Serv.*, 107 F.R.D. 229 (E.D.N.Y.1985); *Friday v. U.S. Dep't of Justice*, No. 93–283–FR, 1994 WL 48956 (D.Or. Feb. 7, 1994). Here, however, it is not the Marshal's Service which is responsible for the failure to serve Defendant Chimon. The Process Receipt and Return Form executed by the Marshal's Service indicates that service was unsuccessful because the personnel department at the NYCPD did not have a Sam Chimon listed as an officer, as stated by the Plaintiff.

■ Plaintiff has failed to offer any further justification for his failure to serve Defendant Chimon or to assist the Marshal's Service in effecting service, other than that

he initially provided the Marshal's Service with information he thought was correct. This assertion, absent any further action by Plaintiff over the nearly two years since he received information, advice, and warning from the Court, does not constitute "good cause" for the failure to effect service. Even allowing for Plaintiff's *pro se* status, given the time he has had to address the problem it cannot be reasonably concluded that he has been diligent or made a good faith effort to do so. *Cf. Delicata v. Bowen*, 116 F.R.D. 564 (S.D.N.Y.1987) (without deciding whether prejudice to Defendant resulting from failure to effect timely service is ever a relevant consideration in dismissal pursuant to Rule 4, court precluded any such concern where Plaintiff had not been diligent in attempting service); *Gordon v. Hunt*, 116 F.R.D. 313, 318–25 (S.D.N.Y.), *aff'd*, 835 F.2d 452 (2d Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988). I therefore recommend that the action be dismissed without prejudice as to Defendant Chimon.

## II. Summary Judgment Respecting Defendants Irizarry and Lafferty

Defendants Irizarry and Lafferty move for summary judgment on the grounds that (1) probable cause existed to arrest Plaintiff; (2) any force used by Defendant Irizarry during the arrest was reasonable under the circumstances; (3) Defendant Irizarry is immune from suit under the doctrine of qualified immunity; and (4) Defendant Lafferty is entitled to summary judgment because his only involvement in the incident was transporting Plaintiff to the 20th precinct. In his Cross–Motion for Summary Judgment, Plaintiff asserts that the facts lead to the opposite conclusion with respect to each of the Defendants' contentions.

### A. Summary Judgment Standard

A party is entitled to summary judgment if he can show that no genuine issue exists as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P.

---

6. The signatures are photocopied from an unknown source and the signature claimed to be Sam Chimon's is practically illegible and not dated.

7. Neither Rule 4(m) nor the Advisory Committee notes suggest, however, that a new standard for judging "good cause" exists under the recent revision to the rule.

56(c); *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). Once a motion for summary judgment, properly supported by documents, answers to interrogatories, affidavits, or depositions has been made, the burden shifts to the nonmoving party to show that a genuine issue as to a material fact does exist. To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must "make a showing sufficient to establish the. existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Mazurkiewicz v. New York City Transit Auth.*, 810 F.Supp. 563, 566 (S.D.N.Y.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). He may not rely on the bare assertions contained in his pleadings, Fed.R.Civ.P. 56(e), but must introduce affirmative evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), which supports "more than a 'metaphysical doubt as to the material facts.'" *McCormack v. Cheers*, 818 F.Supp. 584, 593 (S.D.N.Y.1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). *See also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992).

A dispute alleged in opposition to the motion must be genuine; "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis added). The evidence introduced in opposition must be such that "a jury [could] return a verdict for [the nonmoving] party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106

S.Ct. at 2511. However, the Court is not to resolve issues of fact but rather to see if there are fact issues which require resolution at trial. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993). In determining whether there is a genuine issue for trial, evidence introduced by the nonmovant "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## B. Substantive Issues

■ To defeat Defendants' motion for summary judgment, Plaintiff must offer evidence sufficient to support a reasonable finding that the elements of Plaintiff's Section 1983 claims, on which he would have the burden of proof at trial, have been established. A claim under 42 U.S.C. § 1983 requires proof by the plaintiff that the defendants (1) deprived him of a right, privilege, or immunity secured by the Constitution or federal laws; and (2) that the defendants were acting under color of state law. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994); *Robinson v. City of Mt. Vernon*, 654 F.Supp. 170, 171–172 (S.D.N.Y.1987).

■ Construing the *pro se* pleadings in this case liberally, it is apparent that Plaintiff complains of deprivations of his constitutional rights protected by the Fourth Amendment, due to unlawful arrest and excessive force, and the Fourteenth Amendment, due to denial of medical treatment. Further, although Lieutenant Irizarry was off-duty at the time of the events in issue, there is no dispute that both he and Officer Lafferty were acting under color of state law in arresting Plaintiff and taking him into custody.[8]

8. Even if it was in dispute, that Irizarry was acting "under color of state law" is clear. Although "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983, *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975), *cert. granted*, 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760, *cert. dismissed*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976), "the lack of outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol car—are not alone determinative of whether a police officer is acting under color of state law, [r]ather, the nature of the act performed is controlling." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989). *See also Pitchell*, 13 F.3d at 547–548; *Rivera v. La Porte*, 896 F.2d 691 (2d Cir.1990) (off-duty corrections officer held to be acting

### 1. Unlawful Arrest

■■■ To succeed on a claim of unlawful or false arrest, a plaintiff must show that there was a lack of probable cause for the arrest. *Thomas v. Culberg*, 741 F.Supp. 77, 79 (S.D.N.Y.1990) (citing *Alberts v. City of New York*, 549 F.Supp. 227, 231 (S.D.N.Y. 1982)). Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983); *see also Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989); *Thomas*, 741 F.Supp. at 79. Probable cause should be assessed in light of the "totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 230–232, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983), measured at the moment of the arrest.[9] *O'Neill v. Town of Babylon*, 986 F.2d 646, 649–650 (2d Cir.1993); *Thomas*, 741 F.Supp. at 79 (citing *Beck v. Ohio*, 379 U.S. 89, 93, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964)). The rule of probable cause is a "practical, nontechnical conception." *Beck*, 379 U.S. at 91, 85 S.Ct. at 226.

Plaintiff holds the mistaken notion that an officer must himself have witnessed a suspect committing a crime in order to have probable cause to make the arrest. (Pl.'s Mem. at 9.)

That is not the law. "Officers have probable cause to arrest if they receive 'information from some person ... who it seems reasonable to believe is telling the truth.'" *Thomas*, 741 F.Supp. at 80 (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C.Cir. 1968)).[10] Plaintiff is also mistaken in his view that it makes a difference in this action whether the tenants who informed Lieutenant Irizarry of the attack on Elise Cohen actually viewed the attack or heard it from Ms. Cohen herself. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) (citing *Colon v. City of New York*, 60 N.Y.S.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)); *Dirienzo v. United States*, 690 F.Supp. 1149, 1156 (D.Conn.1988).

The uncontested facts demonstrate that Lieutenant Irizarry had sufficient information to justify an officer of reasonable caution in believing that Plaintiff had committed a crime. Irizarry heard a person screaming for help and witnessed a man descending the stairs from the direction of the screams who, after being asked what was going on and to wait, started trotting toward the door. Irizarry was also told by two of his co-tenants to stop Plaintiff because he had attacked another tenant. Under such circumstances, probable cause existed, because a person of reasonable caution would be warranted in believing that Plaintiff had committed a

---

under color of state law when, after a traffic dispute with arrestee, he used handcuffs and a gun and identified himself as a police officer to effect the arrest); *Stengel*, 522 F.2d at 441; *Drewitt v. Pratt*, No. 2:92 Civ. 13, 1992 WL 516032, at *2 (E.D.Va. Oct. 9, 1992), *aff'd*, 999 F.2d 774 (4th Cir.1993);

Irizarry's actions of questioning Plaintiff, identifying himself as a police officer, drawing his revolver, and attempting to stop and arrest Plaintiff are actions that clearly are in the nature of a police officer's duties.

9. "The experience of a police officer is a factor to be considered in the determination of probable cause...." *Fisher*, 702 F.2d at 378 (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1281, 71 L.Ed.2d 464

(1982). Irizarry had been a police officer for almost eleven years at the time of the incident. (Irizarry Decl. ¶ 1.)

10. Plaintiff claims that Irizarry did not see him in criminal activity and should have gone upstairs to the source of the screams rather than relying on "hearsay" from the other tenants. Such an argument is misplaced in light of the authorities, *supra*, and the rule that once probable cause is established there is "no affirmative duty to weigh conflicting versions of the alleged offense presented by the suspect or by passersby," *Rivera v. Granucci*, No. N-87-480, 1993 WL 76202, at *4 (D.Conn. Mar. 12, 1993), and no "affirmative duty to exhaust all possible avenues of investigation." *Dirienzo v. United States*, 690 F.Supp. 1149, 1157 (D.Conn.1988).

crime.[11]

As events subsequently transpired, probable cause to arrest Plaintiff grew even stronger. After attempting to stop Plaintiff from leaving the building, Plaintiff resisted, resulting in a struggle. During the struggle with Irizarry as well as the other tenants, Irizarry noticed Plaintiff had what appeared to be a gun (it turned out to be a gun-shaped knife). Plaintiff concedes that Irizarry identified himself as a police officer, pulled his own revolver, and ordered Plaintiff to stop. Plaintiff nevertheless pushed Irizarry's gun aside and fled to Broadway. That probable cause to arrest Plaintiff existed at any point during these subsequent circumstances is beyond dispute. Resisting arrest, possession of a weapon, and fleeing arrest, along with what had previously transpired, all gave Irizarry knowledge of facts and circumstances that are more than sufficient to warrant a person of reasonable caution in the belief that an offense had been committed by Plaintiff.

■ Plaintiff's unlawful arrest claim against Officer Lafferty has even less force. The record does not conclusively establish whether Lafferty actually participated in the arrest, after Plaintiff attempted to escape in a taxi, or only transported Plaintiff to the 20th Precinct, and hence was not directly involved in the arrest. Even if Lafferty arrested Plaintiff, under the circumstances there would be probable cause. Lafferty had been provided the details of Plaintiff's encounter with Irizarry by Irizarry himself, a fellow police officer. Irizarry was unquestionably a reliable source of information and since his own knowledge of Plaintiff's conduct gave him probable cause to arrest Plaintiff, it follows logically that the same knowledge gave Officer Lafferty probable cause to arrest Plaintiff. *See United States v. Tussa,* 816 F.2d 58, 63 (2d Cir.1987) (fact that arresting officer lacked personal knowledge of facts deemed irrelevant since other officers who gave the signal to arrest had probable

cause); *United States v. Valez,* 796 F.2d 24, 28 (2d Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987) ("[S]ometimes [an officer's] authority to arrest a suspect is based on facts known only to his superiors or associates."); *United States v. Canieso,* 470 F.2d 1224, 1230 n. 7 (2d Cir.1972) (" 'In a large metropolitan police establishment the collective knowledge of the organization as a whole can be imputed to an individual officer when he is requested or authorized by superiors or associates to make an arrest.' ") (quoting *Williams v. United States,* 308 F.2d 326, 327 (D.C.Cir. 1962)). *See also United States v. Llanes,* 357 F.2d 119, 120 (2d Cir.1966). *Cf. Rivera,* 1993 WL 76202, at *5.

■ Even if probable cause was lacking, Defendants Irizarry and Lafferty would be entitled to qualified immunity for their conduct. The doctrine of qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is available if it was objectively reasonable for Defendants to believe that probable cause existed, based on the information they had at the time of arrest, *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *see also Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992), or "that officers of reasonable competence could disagree on whether the probable cause test was met." *Thomas,* 741 F.Supp. at 81 (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)). "[T]o defeat qualified immunity, the record must show it to be 'obvious that no reasonable competent officer would have concluded that a[n arrest] should issue.' " *Id.* at 81 (quoting *id.* at 921).

**11.** Plaintiff contends that it is not a crime to run. That statement is true, but such action was accompanied by screams for help and statements from others that he tried to assault someone. It is the "totality of the circumstances" not "isolated facts" that determines probable cause. *See United States v. Morales,* 923 F.2d 621, 623–624

(8th Cir.1991). *See also Rivera,* 1993 WL 76202, at *3 (probable cause for arresting suspect after officers saw him leave premises where burglary was reported and he then ran from the officers); *United States v. Margeson,* 259 F.Supp. 256, 264 (E.D.Pa.1966).

■ The Second Circuit has observed that there is a difference between the reasonableness inquiry of a Fourth Amendment claim for arrest without probable cause and that of a qualified immunity defense. *See Warren v. Dwyer*, 906 F.2d 70 (2d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). "Evidence that is insufficient to sustain a finding of probable cause may still be adequate to support the conclusion that it was reasonable for an individual to believe he had a good faith basis for his actions." *Craig v. Krzeminski*, 764 F.Supp. 248, 251 (D.Conn.1991).

Applying these standards, I conclude that Defendants Irizarry and Lafferty are entitled to qualified immunity. Even if a court was to conclude in hindsight that probable cause for the arrest was lacking, it was reasonable for Defendants to believe probable cause existed at the time and under the circumstances described above. Further, at a minimum, reasonable police officers could disagree as to whether probable cause existed.

For the foregoing reasons, Defendants' Motion for Summary Judgment as to unlawful arrest should be granted and Plaintiff's Cross–Motion should be denied.[12]

### 2. Excessive Force

■ The Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), provides the analytic framework for assessing claims of excessive force in the course of an arrest. Such claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," and therefore are viewed without reference to the officers' underlying intent or motivation. *Graham*, 490 U.S. at 388, 109 S.Ct. at 1867–68. Reasonableness must be measured "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1873. Since the right to make an arrest necessarily allows the use of some degree of force to effect it,[13] the determination of whether a particular use of force was objectively reasonable requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. at 1873; *see also, United States v. Schatzle*, 901 F.2d 252, 254–55 (2d Cir.1990); *Calamia v. City of New York*, 879 F.2d 1025, 1034–35 (2d Cir.1989); *Miller v. Lovett*, 879 F.2d 1066, 1069–70 (2d Cir.1989).

■ As a general matter, the fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide. *See, e.g., Calamia*, 879 F.2d at 1035 (after jury trial, court affirmed denial of judgment n.o.v., stating that it was for jury to determine whether use of force was objectively reasonable); *Messina v. Mazzeo*, 854 F.Supp. 116, 133–34 (E.D.N.Y.1994) (court refused to dismiss complaint for failure to state claim for relief, where there had been no discovery and where plaintiff alleged gratuitous, repeated slaps and other blows by arresting officers, resulting in injuries to abdomen, wrist, face and legs, while he was handcuffed and in custody in police car and at police station); *Mazurkiewicz*, 810 F.Supp. at 568 (court denied summary judgment where there were factual disputes about whether plaintiff had been resisting arrest and had struck the arresting officers, the amount of force used and the extent of injury suffered, all requiring assessment of credibility); *Johnson v. Doherty*, 713 F.Supp. 69 (S.D.N.Y.1989) (claim that officer intentionally and without provocation assaulted protester at march with nightstick, with no evidence that person assaulted had either provoked or justified the use of force, required denial of summary judgment and completion of discovery).

---

**12.** Plaintiff's claim that there was a conspiracy between Defendants Lafferty and Irizarry in effectuating his arrest is easily dismissed. Since his arrest was not illegal, whether they acted in concert to effect it is of no legal significance.

**13.** " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' ... violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. at 1873 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033, *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

■ Nevertheless, summary judgment in an excessive force case is not precluded if the evidence, viewed in a light most favorable to the plaintiff, would support a directed verdict for the defendants, i.e., "[i]f reasonable minds could [not] differ as to the import of the evidence" and "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511. As the Second Circuit stated in *Cartier,* 955 F.2d at 845, "if—even when all facts as alleged by the nonmoving party are regarded as true—the moving party is still entitled to judgment as a matter of law, then factual disputes however genuine are not material, and their presence will not preclude summary relief." *See also Odom v. Bruno,* No. 91 Civ. 7273, 1994 WL 132286, at **3–4 (S.D.N.Y. Apr. 14, 1994) (even accepting plaintiff's version of disputed facts, court granted summary judgment where only force used was removal of a soft arm cast in order to handcuff plaintiff who had attempted to flee and was sought on arson and attempted murder charges); *Franklin v. City of Boise,* 806 F.Supp. 879, 885–886 (D.Idaho 1992) ("It is thus apparent that not every excessive force claim must be presented to a jury. There are circumstances where the evidence is so clear that summary judgment is warranted."); *Roundtree v. City of New York,* 778 F.Supp. 614, 622 (E.D.N.Y.1991) (court dismissed excessive force claim in which only force alleged was being pushed into a car, resulting in emotional pain and suffering; issue of whether force used was reasonable "is submitted to the jury only when the court finds itself unable to discern a clear answer."); *Brooks v. Pembroke City Jail,* 722 F.Supp. 1294 (E.D.N.C.1989) (summary judgment granted against bicyclist intentionally hit by officer in the eye; officer's actions held reasonable where plaintiff was drunk and physically resisted arrest by swinging at and pushing officers); *Ford v. Retter,* 840 F.Supp. 489 (N.D.Ohio 1993) (summary judgment granted where arresting officer grabbed arrestee, pulled him from bathroom, tripped him and threw him to ground, injur-

ing his finger; use of force found to be reasonable from perspective of reasonable officer on the scene, who had to make split-second judgment); *cf. Reid v. Coughlin,* No. 86 Civ. 1351, 1994 WL 23152, **3–4 (S.D.N.Y. Jan. 26, 1994) (summary judgment granted on Eighth Amendment excessive force claim based upon disputed facts where court found that, assuming facts as propounded by the plaintiff, force did not rise to the level of constitutional violation).

■ In this case Plaintiff accuses Officer Irizarry of using excessive force. (Complaint ¶ IV.) The following facts are undisputed. Officer Irizarry heard screams for help and received reports that a tenant in his building had been attacked. Plaintiff, coming from the direction of the screams, refused to heed Defendant's request to stop and trotted toward the door of the apartment house in order to leave. As discussed *supra,* Defendant Irizarry had probable cause to effect an arrest. He tried to stop Plaintiff by blocking the door and grabbing him. He was unsuccessful and at least one, if not two, other tenants in the building tried to assist him by wrestling Plaintiff to the ground. Plaintiff continued to struggle and, by his own account, succeeded in resisting efforts to handcuff him. During his struggle with Defendant Irizarry and the other tenant(s), Plaintiff was in possession of a dangerous weapon. Defendant Irizarry saw it and believed it to be a small gun. It was in fact a knife shaped like a gun. Despite the efforts of two or three people to subdue him, and after Defendant Irizarry had identified himself as a police officer and ordered Plaintiff to stop, Plaintiff ran away and attempted to escape in a taxi. All of these facts are conceded by Plaintiff to be true.

■ There is, however, some dispute as to the nature and amount of force Defendant Irizzary used. Plaintiff claims that while he was struggling with Irizarry and the tenant(s), he was kicked by Irizarry. (Pl.'s Dep. at 83, 85, 87.) Defendant Irizarry denies kicking Plaintiff. (Irizarry Decl. ¶ 5.)[14]

**14.** Plaintiff alleges no injury as a result of being kicked. An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim. *Knight v. Caldwell,* 970 F.2d 1430,

1432 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993) (arrestee required to prove that he suffered some injury,

Plaintiff acknowledges that he continued to struggle and resisted being handcuffed. (Pl.'s Dep. at 83, 85, 87.) Then, as Plaintiff described in his deposition: "[Irizarry] stuck the pistol to the back of my neck, I grabbed the pistol with my left hand and I pushed it away from me and I jumped up and I ran." (Pl.'s Dep. at 88.) Elsewhere, Plaintiff characterizes Irizarry's action as having "jammed" the barrel of his gun against the back of his head. (Complaint, ¶ IV–A.)[15] Plaintiff alleges that this resulted in a "hole" which bled until the next day. Defendant Irizarry claims that he did not place his gun to Plaintiff's head but merely pointed it at Plaintiff and ordered him to drop his weapon. (Irizarry Decl. ¶ 5.) Irizarry contends, however, that even if he had placed or "jammed" the gun to the back of Plaintiff's head and kicked Plaintiff, those actions would have been reasonable under the circumstances. In any event, it is also undisputed that whatever Defendant Irizarry did with his gun did not serve to subdue Plaintiff, cause him to drop his weapon or effect his arrest. He admits to having pushed the gun aside and fleeing.

Viewing the facts in a light most favorable to Plaintiff, and accepting his version of Defendant's actions, I must still conclude that no reasonable juror could find it objectively unreasonable for Officer Irizzary to have kicked Plaintiff during the struggle to subdue him or to have "stuck" or "jammed" a gun against his head. Present in this case are all of the factors the Supreme Court suggested require close attention in determining whether a use of force was objectively

reasonable. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1873, 104 L.Ed.2d 443 (severity of the crime at issue, whether the suspect poses an immediate threat to safety of police officer or others, whether he is actively resisting arrest or attempting to evade arrest by flight). Plaintiff was reasonably believed to have assaulted an elderly woman; he was forcefully resisting arrest, wrestling with a police officer and civilians; at the time, he was carrying a dangerous weapon, reasonably believed to be a gun; he attempted to flee on two occasions and was successful in fleeing even after the alleged use of force.

Accepting Plaintiff's version of the facts, Defendant's actions and use of force were graduated—he first requested Plaintiff to stop; he then tried to restrain him by blocking the door and holding on to him; he then wrestled him to the ground and, if Plaintiff is to be believed, while Plaintiff was armed, still resisting being handcuffed, and fighting with Defendant as well as civilians, Defendant kicked him, resulting in no injury. Even if Irizarry did kick him, this did not subdue Plaintiff or cause him to comply. Only when he failed to comply did Officer Irizarry either point his gun at him, or, as Plaintiff contends, jam it or stick it against his head. Plaintiff still did not drop his weapon and he fled.[16] Since the force used was ineffective, there is no reasonable basis to conclude that a lesser amount of force would have been effective in preventing Plaintiff from fleeing, protecting Officer Irizarry and the people who were struggling with Plaintiff while he was in pos-

---

even if insignificant); *Roundtree*, 778 F.Supp. at 620–623.

**15.** In a subsequent Affidavit, Plaintiff embellished upon this description, stating that Irizarry "hit me upside my head with his gun." (Landy Decl. ¶ 3; Pl.'s Mem. at 6.) To the extent that this embellishment can be viewed as contradicting Plaintiff's deposition testimony it should be disregarded. "It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124–125 (2d Cir. 1987). *See also Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991); *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.),

*cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

**16.** Although Plaintiff is not required to demonstrate a substantial or permanent injury to prevail on his excessive force claim, the severity of his injury could shed some light on the amount of force that was used. No medical records have been produced which document the fact or severity of Plaintiff's head injury, although it appears to be undisputed that he sustained some sort of cut. There are, nevertheless, some logical limits to the possible severity of Plaintiff's injuries, given the record in this case. After having the gun placed or "jammed" against his head, Plaintiff was still able to forcibly escape, run a block, and attempt to leave in a taxi.

session of a weapon, or achieving Plaintiff's arrest.

Indeed, Plaintiff himself does not appear to argue that it was unnecessary to use force to subdue or arrest him or that the force itself was excessive; rather, the thrust of his claim is that his arrest and *any* use of force were unreasonable because Defendant Irizarry did not have sufficiently reliable information to believe he committed a crime so as to justify stopping him or effecting an arrest. (Pl.'s Mem., Argument Point Two.) Further, although state of mind is irrelevant to a use of excessive force inquiry, there is no suggestion here that Defendant Irizzary struck Plaintiff gratuitously or simply to inflict injury. Nor is there an allegation that Defendant Irizarry continued to use force once Plaintiff dropped his weapon and ceased resisting. All of these undisputed facts distinguish this case from the more common situation in which factual questions require the jury to resolve whether the officer's use of force was objectively reasonable. *See, e.g., Finnegan v. Fountain,* 915 F.2d 817, 818 (2d Cir.1990) (factual dispute as to whether, without provocation or warning, police shoved plaintiff and her mother into a wall, dragged her by the hair and knocked her face into a squad car, or whether plaintiff resisted arrest by kicking police officer in the groin and screaming obscenities at police); *Calamia,* 879 F.2d at 1035 (as soon as arrestee answered door he was shoved to the floor, tightly cuffed with hands behind his back and left in that painful position for many hours while officers searched his apartment; proper to allow jury to decide whether this use of force was objectively reasonable); *Mazurkiewicz,* 810 F.Supp. 563 (sharp factual dispute as to whether plaintiff was beaten and battered without provocation).

Viewing Officer Irizarry's conduct from the perspective of a reasonable officer, required to make an on-the-spot judgment in light of the facts and circumstances confronting him, it is my conclusion that the force he used, if any, was, as a matter of law, objectively reasonable.[17] He is therefore entitled to summary judgment.

 Since I recommend dismissal of Plaintiff's excessive force claim on the merits, it would appear that the claim could also be dismissed on qualified immunity grounds for similar reasons. To be entitled to qualified immunity, a police officer must establish facts satisfying one of two tests: "either that his conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that his acts did not violate these clearly established rights." *Finnegan,* 915 F.2d at 823 (citing *Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.1990) and *Calamia,* 879 F.2d at 1035).

 Although the Second Circuit has held "that the qualified immunity defense is generally available against excessive-force claims," *Finnegan,* 915 F.2d at 822–24, it has also observed that there is a "doctrinal tension" in applying qualified immunity to these claims. *Id.* 915 F.2d at 824 n. 11. The practical difference between the objective reasonableness required to defend on the merits of an excessive force claim and that required for a qualified immunity defense, is difficult to decipher. *See Ford,* 840 F.Supp. at 491–492 ("[T]he distinction between the defense of qualified immunity and the substantive law of an excessive force claim have [sic] become blurred."); *Merzon v. County of Suffolk,* 767 F.Supp. 432 (E.D.N.Y.1991) (objective reasonableness determination of excessive force under Fourth Amendment may merge with the question of whether there is qualified immunity available).[18] Although

---

**17.** Comparable levels of force have been found to be objectively reasonable in other cases where the suspect was either resisting arrest or trying to flee. *See, e.g., Pride v. Does,* 997 F.2d 712 (10th Cir.1993) (trooper's placing hand around arrestee's neck and applying force where arrestee was combative and acting in threatening manner found objectively reasonable); *Brooks,* 722 F.Supp. at 1299 (after plaintiff resisted arrest and shoved officer to pavement, even if officer delivered intentional blow which resulted

in black eye, there was no Fourth Amendment violation).

**18.** Although the Fourth Amendment objective reasonableness standard also applies to the question of whether probable cause for an arrest existed, that inquiry can more readily be distinguished from the qualified immunity inquiry than the substantive inquiry can be distinguished from qualified immunity analysis in the excessive force context. As the Second Circuit has explained,

this issue need not be resolved here, suffice it to say that the doctrine of qualified immunity is intended to provide a threshold of protection to public officials even where their actions, although perhaps unlawful, do not violate clearly established rights of which they should have known. "The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action." *Cartier*, 955 F.2d at 844.

Thus, as a matter of logic, if it was objectively reasonable for Defendant Irizarry to use the force he employed based upon his perception of the circumstances at the time and under the pressure of the moment, it would follow that it was objectively reasonable for him to believe that his conduct did not violate any clearly established rights of which a reasonable officer should have known.[19]

For the foregoing reasons, I recommend that Defendant Irizzary be granted summary judgment on Plaintiff's claim of excessive force.

### 3. Denial of Medical Treatment

Defendants Lafferty and Irizarry are also entitled to summary judgment on Plaintiff's claim of denial of medical treatment.[20] In order to be liable under Section 1983, "the plaintiff must allege that the defendants 'were directly and personally responsible for the purported unlawful conduct.'" *Herrera v. Scully*, 815 F.Supp. 713, 722 (S.D.N.Y.1993) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir.1987)). *See also Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987); *Cepeda v. Coughlin*, 785 F.Supp. 385, 390 (S.D.N.Y.1992); *Owens v. Coughlin*, 561 F.Supp. 426, 428 (S.D.N.Y. 1983). In their 3(g) Statement, Defendants asserted that it is unknown who Plaintiff asked for medical assistance. Neither in his Complaint, 3(g) Statement, nor in his deposition does Plaintiff mention Defendants Irizarry or Lafferty as being involved in any denial of medical treatment. His only specific reference to any individual concerning a

---

the probable cause inquiry on a false arrest issue involves an *ex post* inquiry, i.e., viewing the actual circumstances found to have existed at the time of the arrest; the qualified immunity defense involves an *ex ante* inquiry, i.e., from any reasonable point of view the officer may have harbored at the time of the arrest, even if he misperceived the facts. However, in assessing the merits of an excessive force claim, reasonableness is judged *ex ante*, from the perspective of a reasonable officer on the scene, rather than with hindsight. *Finnegan*, 915 F.2d at 824 n. 11.

**19.** In one relatively recent Second Circuit decision, the distinction between the objective reasonableness of the arresting officers' use of force and their defense of qualified immunity was more apparent. *See Soares v. Connecticut*, 8 F.3d 917 (2d Cir.1993). That case, however, involved a set of facts and a legal question that distinguish it from the routine excessive force case. The force challenged in *Soares* was the use of handcuffs, and the Court refused to adopt a *per se* rule that handcuffing is reasonable whenever an arrest is made, regardless of whether the arrestee is resisting, attempting to flee, accused of a non-violent crime or considered dangerous. Nevertheless, it went on to find qualified immunity because of the absence of existing caselaw recognizing a right not to be handcuffed, and a few conflicting decisions on the issue. In contrast, in most excessive force cases, as in the instant case, the only clearly established right is the generalized right to be free from excessive

force and the conduct challenged falls within a fact specific spectrum as to which the "objective reasonableness" test must then be applied.

**20.** Denial of medical treatment to a sentenced prisoner is a violation of the Eighth Amendment when it involves "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In cases involving a pretrial detainee, which I assume is the case here, the applicable constitutional protection is the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Although the Supreme Court and the Second Circuit have left unresolved precisely what the standard of care is under the Fourteenth Amendment, "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protection available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). "[A]t the very least, more than mere negligence, and, at the very most, a deliberate indifference to plaintiff's medical needs [is required]." *Messina v. Mazzeo*, 854 F.Supp. 116, 140 (E.D.N.Y.1994). There is, however, no need to apply any particular standard of care in this case as I do not reach the issue directly.

denial of medical treatment is to Sam Chimon, who has never been served with the Complaint in this action.

Because Plaintiff fails to allege or offer specific facts linking either Defendant Irizarry or Lafferty to his requests and alleged denial of medical treatment, Defendants are entitled to summary judgment on this issue.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's Cross–Motion for Summary Judgment be denied and the Motion for Summary Judgment brought by Defendants Irizarry and Lafferty be granted and the action be dismissed with prejudice as to them. Further, I recommend that the action as to Defendant Chimon be dismissed without prejudice, pursuant to Rule 4(m), Fed.R.Civ.P.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten days from service of this Report to file written objections. *See also,* Fed.R.Civ.P. 6(a) and (e). Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, U.S.D.J., and to the chambers of the undersigned, Room 115. Any requests for an extension of time for filing objections must be directed to Judge Wood. Objections that are not filed on time will be waived for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

ATTACHMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————— X

 DAN LANDY,

 PLAINTIFF,

 -AGAINST-

 DON IRRIZARRI, DANIEL LAFFERTY,
 SAM CHIMON,
 DEFENDANTS. X

PLAINTIFF OBJECTION
TO THE REPORT AND
RECOMMENDATION.
92 CIV. 6045.
(KMW) (THK)

TO: HON. KIMBA M. WOOD,
 U.S. DISTRICT JUDGE.

 DAN LANDY, PRO-SE PLAINTIFF, RESPECTFUllY FILES THIS OBJECTION TO THE HON. KIMBA M. WOOD, U.S. DISTRICT JUDGE FROM THE REPORT AND RECOMMENDATION, SUBMITTED BY THE HON. THEODORE H. KATZ, U.S. MAGISTRATE JUDGE'S FINDING BASED ON THE MERITS, PERTAINING TO ISSUE'S, SUBMITTED BY THE DEFENDANTS, AND PLAINTIFF IN HIS RECOMMENDATION. THIS SECTION 1983 ACTION WAS COMMENCE BY THE PLAINTIFF ON JULY 20, 1992, AND WAS REFERRED TO JUDGE KATZ, FOR All PRETRIAL PURPOSES, INCLUDING DISPOSITIVE MOTIONS. THE PLAINTIFF PRO-SE CLAIMS, THAT HE WAS UNLAWFUllY ARRESTED BY DEFENDANT IRRIZARRI, AND WAS DENIED MEDICAL TREATMENT, FOR A HEAD INJURIE HE RECIEVED, PRIOR TO BEING ARRESTED BY DEFENDANT IRRIZARRI, AND WAS DENIED EMERGENCY MEDICAL TREATMENT, BY DEFENDANTS DANIEL LAFFERTY, AND SAM CHIMON.

 PLAINTIFF SEEK'S COMPENSATARY, AND PUNITIVE DAMAGES FOR HIS PHYSICAL INJURIES, PAIN, AND SUFFERING AS A RESUIT OF THE DENIAL OF EMERGENCY MEDICAL TREATMENT. "SEE COMPLAINT P. 5."

804

For All The Reason Stated Herein. And Documents submitted to support Plaintiff Objections. The Plaintiff respectfully Request That Defendants summary Judgment Motion Be Denied, And Plaintiff Motion For Summary Judgment Be Granted, Upon The Findings That The Defendants, Do Not State A Cause Of Action That Would Bar This Court From Permitting Plaintiff From Proceeding, With This Cause Of Action, And That The Complaint Be Aloud To Proceed With Pre Judice, As To Defendant Sam Chimon, Do To The Facts Stated Herein.

## BACKGOUND

The present action commensed from events, that transpired on Oct. 26, 1990. The Plaintiff was at the location of 120 W 70Th street, N.Y. county at about 5:57 P.M. For business matters concerning two contracts The Plaintiff Had in His possession at that time. One contract informed Him That He could not be under two contracts at the same time, So Plaintiff was advised to seek the advise of an Attorney. The Plaintiff search Through the N.Y. Telephone Book, And wrote down a Attorney's name, Address, and Telephone number located at that location. An called the number, And a date was set for Him to come there, with Both Contract So That He could obtain Good Sound Advice pertaining to the review of the Agreement contain therein. The Plaintiff after leaving His Job, proceeded To 120 W 70Th street. Arriving at that location, Plaintiff rang the intercom button And was bussed in by the occupant of that apartment, And Plaintiff proceed up in the elevater to the apartment number on the paper. Upon Ringing the Bell, He was Greeted by a women who answered the door, And informed Him That The person He was there to see, was not in at the time, so He would have to come back, at another time (PL. S Dep. at 62).

THE PLAINTIFF PROCEEDED DOWN THE STEPS. ON THE WAY DOWN HE ENCOUNTERED A WOMEN, LATER KNOWN TO BE "ELISE COHAN," ON THE STEPS BETWEEN THE SECOND, AND THIRD FLOOR. THE PLAINTIFF GREETED HER AND SHE INTURNED GREETED PLAINTIFF. AS PLAINTIFF WAS GOING DOWN THE STAIRS, HE CALLED OUT TO HER, AND STARTED ON HIS WAY BACK UP TO ASK HER IF SHE KNEW THE TENANT WHO'S NAME WAS ON THE SLIP OF PAPER HE HELD IN HIS HAND. MS. COHAN, STARTED CLINCHING HER PURSE TO HER CHEST, AND YELLING AT THE PLAINTIFF. SO PLAINTIFF TURN AROUND AND WALK DOWN THE STEPS TO THE SECOND FLOOR LANDING (PL. S DEP. AT 65). THE DEFENDANT IRRIZARRI OPENED UP HIS DOOR, AND SEEING THE PLAINTIFF. HE ASKED HIM "WHAT'S GOING ON" AND PLAINTIFF REPLY "I DON'T KNOW" TO WHICH THE DEFENDANT TOLD THE PLAINTIFF "TO COME WITH HIM SOMEPLACE" TO WHICH PLAINTIFF STATED "FOR WHAT" AND CONTINOUED DOWN THE STEPS. THE DEFENDANT STARTED WALKING BEHIND THE PLAINTIFF, AND PLAINTIFF PICK-UP HIS PACE, AND STARTED TROTTING TO THE LIBBYS FRONT DOOR. THE DEFENDANT RAN UP ON THE PLAINTIFF AND GRABED HIM BY THE BACK OF HIS JACKET RIPPING OFF THE HOOD. WHEN THAT FAILED, HE THEN JUMP ON PLAINTIFF BACK, AND TRIED TO STOP PLAINTIFF MOVEMENT. PLAINTIFF GRABED THE DOOR KNOB AND TRIED TO TURN IT, BUT ANOTHER TENANT ON HIS WAY DOWN THE STEPS SEEN US TUSSELING AND JOINED IN. THE PLAINTIFF WITH HIS HAND ON THE KNOB TURN IT, AND THE DOOR OPENED UP AND THEY SPILLED OUT ON TO THE SIDE WALK. ONCE OUTSIDE THE PLAINTIFF WAS KNOCK TO THE GROUND, AND DEFENDANT TRIED TO HANDCUFF THE PLAINTIFF, BUT PLAINTIFF WOULD NOT LET HIM. SO HE BEGAN KICKING THE PLAINTIFF, IN THE SIDE, AND YELLED TO THE OTHER TENANT LATER KNOWN TO BE A MR. M. CHAYT, TO GET UP, BUT HE WAS STILL HOLDING THE PLAINTIFF DOWN ON THE GROUND AND STRUGGLING WITH THE PLAINTIFF. THAN WITHOUT SAYING ANOTHER WORD TO THE TENANT MR. CHAYT, HE TOOK OUT A 38 CALIBER HANDGUN AND JAMMED IT INTO THE PLAINTIFF SKULL, RIGHT BELOW THE PLAINTIFF LEFT EAR. MAKING A BIG HOLE IN PLAINTIFF SKULL.

THE PLAINTIFF REACHED OUT AND PUSH DEFENDANT IRRIZARRI, HAND WITH THE GUN IN IT AWAY FROM THE HOLD, AND WIGGIED FREE FROM MR CHAYT, AND STOOD UP. MR CHAYT, GRABBED PLAINTIFF ZAP MAILING ENVILOPE OFF THE GROUND, AND PLAINTIFF GRAB IT OUT OF HIS HANDS AND RAN TOWARDS BROADWAY AND 70TH STREET. JUST BEFORE HE CAME TO BROADWAY HE STOPPED SCENE SOME CREDIT CARD AND OTHER I.D CARDS ON THE GROUND, AND BENT DOWN TO PICK THEM UP. WHEN HE TURNED TO THE SIDE HE SCENE IRRIZARRI, RUNNING DOWN THE OTHER SIDE OF THE STREET WITH A GUN IN HIS HAND. HE THEN RAN AND GOT IN A TAXI CAB, AND ASK THE DRIVER TO CALL THE POLICE ON HIS C.B. RADIO, BECOUSE A MAN WITH A GUN WAS CHASING HIM. THE DEFENDANT RAN UP TO THE DRIVER WINDOW, AND POINTED HIS GUN AT THE DRIVER AND ORDERED HIM NOT TO MOVE THE CAB. THE DRIVER THEN PICK UP. THE C.B. MIKE AND CALLED THE POLICE. THE PLAINTIFF TOLD THE DRIVER TO LOCK HIS DOOR AND WE SAT AND WAITED FOR THE POLICE TO ARRIVE. THE DRIVER ADVISED A WOMEN PASSENGER SITTING ON THE OTHER SIDE OF THE PLAINTIFF TO LOCK HER DOOR, BECOUSE IRRIZARRI WAS ACTING CRAZY, AND POINTING HIS GUN AT THE DRIVER. THE TAXI CAB DRIVER AND THE WOMEN SITTING NEXT TO THE PLAINTIFF WITNESS THAT MUCH OF THE ENCOUNTER, AND CAN STATE THAT THE DEFENDANTS IRRIZARRI, AND LAFFERTY, TOLD THE PLAINTIFF TO THROW HIS GUN OUT THE WINDOW OF THE CAB, AND STICK HIS HANDS OUT THE WINDOW. THE PLAINTIFF STATED HE DID NOT HAVE A GUN, AND PLACE HIS HANDS OUT THE WINDOW. HE WAS HANDCUFF AND PLACED IN A PATROL CAR, AND TAKEN TO THE 20TH PRECIENT BY LAFFERTY. WHILE AT THE 20TH PRECIENST THE PLAINTIFF WAS PROCESSED, AND PLACED IN A HOLDING PEN. SOME TIME HAD PASS BY, AND THE PLAINTIFF WAS TAKEN TO A INTERVIEW ROOM AND QUESTION BY DEFENDANTS LAFFERTY, AND SAM CHIMON. THE PLAINTIFF REQUESTED MEDICAL TREATMENT, AND WAS TOLD BY BOTH DEFENDANTS THAT HE WILL NOT RECIEVE ANY TREATMENT UNTIL AFTER HE HAS BEEN ARRIGNED ON THE CRIMINAL CHARGES, LOGDE AGAINST HIM. THEY THEN PLACED THE PLAINTIFF BACK IN THE HOLDING PEN. THE PLAINTIFF WAS TAKEN TO CENTRAL BOOKING, AND INTERVIEW BY A PERSON KNOWN ONLY AS MILLER, SEE PL. EXH. NO# 2.

THE PLAINTIFF WAS PLACED IN A HOLDING PEN, FOR SEVERAL HOURS WAITING TO BE ARRAIGNED ON THE CHARGES LOE AGAINST HIM, FOR BURGLARY IN THE FIRST DEGREE. ATTEMPT KIDNAPPING IN THE SECOND DEGREE, AND POSSESSION OF A WEAPON IN THE THIRD DEGREE (2 CTs.) (SEE PL. EXH. NO# 4). THE CHARGE WAS DISMISS ON APRIL 14, 1992, BY THE HON./ROSE L. RUBINS, PART 35, SUPREME COURT, PURSUANT TO C.P.L. 30.30. ON THE GROUNDS THAT PLAINTIFF CONSTITUTIONAL RIGHT WAS VIOLATED, BECOUSE HE WAS DENIED A SPEEDY TRIAL, (SEE PEOPLE V. LANDY. NO. 13037-90 N.Y. S.CT. MEMORANDUM DECISION. DATED MAY 20, 1992.)

PLAINTIFF FILED THE COMPLAINT IN THIS ACTION ON JULY 29, 1992, NAMING AS DEFENDANTS DON IRRIZARRI, DANIEL LAFFERTY, AND SAM CHIMON. PLAINTIFF CLAIMS THAT DEFENDANT IRRIZARRI UNLAWFUIIY ARRESTED HIM, AND IN THE COURSE OF THE ARREST HE COUSED THE PLAINTIFF PERMANENT PHYSICAL INJURIES. THE PLAINTIFF AISO CLAIMS THE DEFENDANT DANIEL LAFFERTY, AND SAM CHINON, PROCEEDED ON PROCESSING THE PLAINTIFF AT THE 20TH PRECIENT AND KNEW THE PLAINTIFF NEEDED EMERGENCY MEDICAL ATTENTION, BUT REFUSED TO RENDER SUCH MEDICAL TREATMENT.

## DISCUSSION

IT IS SETTLED THAT IN THE PRO-SE § 1983 CONTEXT, A COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM, UNLESS THE PLAINTIFF "CAN PROVE NO SET OF FACTS THAT WOULD ENTITLE HIM TO RELIEF ON THE MERITS." DAVIS V. BRYAN, 810 F.2d 42, 45 (2d CiR. 1987). TO DETERMINE WHETHER PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM, WE BEGIN WITH THE ELEMENTS OF A § 1983 CAUSE OF ACTION.

A § 1983 plaintiff must establish (1) that the conduct he complains of was committed by a person acting under color of state law, and (2) that this conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. (Parratt v. Taylor, 451 U.S. 527, 535. 101 S. CT. 1908, 1912-1913, 68 L. ED. 2d 420 (1981). It appear that plaintiff Landy, sustained an actionable injury. The injury was inflicted under color of state law. Defendants do not dispute this. The alleged police misconduct took place in connection with Landy's, arrest and subsequent custodial transport to, and from the 20th precient up until being committed, to the Manhattan Correctional facility.

The more diffecuit question, at which the plaintiff focus this court's attention to is whether he has alleged facts which if proved, would constitute an actionable deprivation of a secured constitutional right. As he indicated, Landy contends that his fourteenth amendment rights were violated by officer Irrizarri's, conduct on the evening of the arrest. This claim is valid, for two reason's (1) what Landy complains of is custodial mistreatment by police officers. From a constitutional perspective, /the complaint alleges a violation of the right under the fourteenth amendment to be free from deprivations of liberty without due process of law. In this regard, the complaint is akin to that finding's in Ingraham v. Wright, 430 U.S. 651, 671-673, 97 S. CT. 1401, 1412-1413, 51 L. ED. 2d 711 (1977). In Ingraham the Supreme Court agreed that personal security against physical harm, is an aspect of the constitutional liberty protection by the fourteenth amendment. See Ingraham, 430 U.S. at 674, 97 S. CT. at 1414. The plaintiff conciude that his claim has a valid constitutional foundation, it lies, in the fourteenth amendment's protection of substantive due process rights. (2) Substantive due process potections are designed to guard the plaintiff against certain goverment actions regardless of the fairness of the procedure used to impiement them. Hudson v. Paimer, 468 U.S. 517, 541 N. 4, 104 S.CT

3194. 3197 N. 4. 82 L. ED. 2d 393 (1984) A Substantive Due Process Violation, Occurs When The Goverment Engages In Conduct Which Offends "Those Canons of Decency And Fairness Which Express The Notions Of Justice Of People, Even Toward Those Charged With The Most Heinous Offense" Rochin V. California, 342 U.S. 165, 169. 72 S. CT. 205. 208, 96 L. ED. 183 (1952). In The Law Enforcement Context, When A Liberty Interest Is Implicated, One Test Used To Determine Whether There Has Been A Violation Of Substantive Due Process, Centers On Whether The Conduct Which Allegedly Precipitated The Harm Complained Of "Can Shock The Conscience Of The Court." Rochin, 342 U.S. At 72 S.CT. At 209. In Determining Whether The Defendants Conduct Shocks The Conscience, A Court Should Be Guided By A Number Of Factors Enumerated By Judge Friendly, In Johnson V. Glick. 481 F. 2d 1028, 1033 (2d Cir. 1973), The Court Should Strike A Balance Between The Need For Application of Force, And The Amount Of Force Used. The Plaintiff Noted That There is An Allegation Of Excessive Force In His Complaint, The Johnson Factors May Indeed Be Implyed Here, Given The Nature Of Landy's Claims. This Court Shouldn't Be Persuaded Upon Review Of All Defendant's Submission, That What Landy Alleges In His Complaint, Can Be Defeeted By A Motion For Summary Judgment "Because It Only Amounts To A Simple Garden Variety Negligence." That Has No Standings To The Complaint. Landy's Allegation That The "Defendants Police Officer's - is Responsible For- Making Me Go From Arrest To After Being Committed To The Manhattan Corr. Facility, Without Medical Treatment, Would At The Very Least Be A Charge That The Actions Of The Police Officer's Involved Were Deliberately, Indifferent To Landy's Rights, If Not Reckless, or Intentional. See Plaintiff Complaint At 4 and 5. Liberally Construed, Landy's Complaint Alleges That The Act Of Compelling Him To Go Without Medical Treatment, Until Well After 10 Hours In The Custody Of The Defendants, Was "Deliberate, Gratuitous, And Excessive." See

MASSOP V. COUGHLIN 770 F. 2d. 299 301(2d CIR.) THE STANDARD PRO-SE COMPLAINT FORM WHICH LANDY SUBMITTED IN THIS ACTION ASK A PLAINTIFF TO DESCRIBE HIS INJURIES, AND TO "STATE WHAT MEDICAL TREATMENT WAS REQUIRED AND RECIEVED". LANDY'S, RESPONSE TO THAT QUESTION WAS, HE HAD TO BE SENT TO <u>BELLEVUE HOSPITAL</u>, BECOUSE HE WAS IN BAD SHAPE FROM LOSS OF BLOOD, AND TO WEAK, TO BE EXCEPTED BY MANHATTEN CORR. FACILITY. SEE COMPLAINT P. 9AND5. HE EXPRESSLY CLAIMED OF HAVING SUSTAINED INJURIE, WHICH REQUIRED MEDICAL TREATMENT. LANDY'S, ALLEGATION OF INJURY ARE SUFFICIENT TO WITHSTAND A MOTION TO DISMISS. SEE CONWAY V. VILLAGE OF MOUNT KISCO, 758 F. 2d 46. 48 (2d CIR. 1985) CERBONE V. CONWAY — U.S. — 107 S. CT. 390, 93 L. Ed. 2d 325 (1986) (§ 1983 CLAIM HELD SUFFICIENT, WHERE PLAINTIFF ALLEGED DEPRIVATION OF DUE PROCESS AS A RESULT OF SEVEN HOURS OF DETENTION AND GREAT HUMILIATION, RIDICULE, AND MENTAL ANGUISH.") NOTWITHSTANDING THE HON. KATZ, EVALUATION OF FINDINGS. WE ARE AWARE THAT STANDARD FOR EVALUATION OF A PRO-SE § 1983 COMPLAINT IN THE CONTEXT OF A MOTION TO DISMISS CALLS FOR THE GENEROUS RESOLUTION OF DOUBTS IN FAVOR OF THE PLAINTIFF. MANY CLAIMS THAT ARE NOT LIKELY TO PREVAIL ARE SUFFICIENT TO OVERCOME A PRETRIAL MOTION TO DISMISS. "THE ESSENCE OF THE §1983 CLAIM IS NOT ALLEGED GROUNDLESS PROSECUTION, WITHOUT WHICH THERE WOULD NOT BE ANY BASIS FOR THE CLAIM"). CERT. DENIED. 450 U.S. 920. 101 S. CT. 1368. 67 L. Ed. 2d. 347 (1981). ANGEL V. KASSON. 581 F. SUPP. 170. 175 & N. 9 (N.D. N.Y. 1983), LANDY'S § 1983 ACTION AGAINST THE POLICE OFFICERS FOR UNLAWFULLY ARRESTING HIM IS ALSO SUBSTANTIALLY THE SAME IN HIS § 1983 ACTION. A WARRANTLESS ARREST IS PRESUMPTIVELY UNLAWFUL UNDER NEW YORK LAW. SEE BROUGHTON V. STATE 37 N.Y. 2d451, 457-58, 373 N.Y.S. 2d 87, 94-95, 335 N.E. 2d 310. 315. CERT. DENIED. 423 U.S. 929. 96 S. CT. 277, 46 L. Ed. 2d 257 (1975); THE PLAINTIFF NEED NOT PROVE EITHER MALICE, OR WANT OF PROBABLE CAUSE. THE DEFENDANTS HAS THE BURDEN OF PROVING THAT/THE ARREST WAS AUTHORIZED UNDER N.Y. CRIM. PROC. LAW §140. 10 (MCKINNEY 1981). WHICH REQUIRES "REASONABLE CAUSE."

THE EQUIVALENT OF PROBABLE CAUSE. PROOF OF SUBJECTIVE GOOD FAITH DOES NOT SHIELD AN OFFICER FROM LIABILITY FOR AN UNLAWFUL ARREST, THOUGH IT MAY MITIGATE DAMAGES. SIMILARLY, A DEPRIVATION OF LIBERTY WITHOUT "REASONABLE CAUSE" IS A §1983 VIOLATION AS TO WHICH THE DEFENDANTS BEARS THE BURDEN OF PROVING REASONABLENESS, AND A SUBJECTIVE GOOD FAITH BELIEF IN THE LEGALITY OF THE ARREST IS NOT ENOUGH — AT LEAST AT THIS STAGE OF THE SUPREME COURT DECISIONMAKING - TO ESCAPE §1983 LIABILITY, SEE HARLOW V FITZGERALD 457 U.S. 800. 815, 102 S. CT. 2727, 2736, 73 L.Ed. 2d. 396 (1982); SCHEVER V. RHODES, 416 U.S. 232, 247-48, 94 S. CT. 1683, 1691-92, 40 L. Ed. 2d. 90(1974); McELVEEN V. COUNTY OF PRINCE WILLIAM. 725 F. 2d 954, 956-57 (4TH CIR) CERT. DENIED — U.S. —105 S. CT. 88, 83 L. Ed. 2d. 35 (1985). SINCE THERE IS NO QUESTION THAT THE ARRESTING OFFICERS ACTED UNDER COLOR OF STATE LAW, IF THEY MADE A FALSE/ARREST OR MALICIOUS PROSECUTION THEN THEY ALSO VIOLATED/SECTION 1983. TO PROVE A CONSTITUTIONAL VIOLATION UNDER 42 U.S.C. §1983 FOR FALSE ARREST OR MALICIOUS PROSECUTION, PLAINTIFF MUST ESTABLISH THE ELEMENTS OF THE STATE LAW TORTS OF FALSE ARREST, SEE RAYSOR V. PORT AUTHORITY OF NEW YORK AND NEW JERSEY, 768 F. 2d 34, 40 (2d CIR.) CERT. DENIED 475 U.S. 1027, 106 S.CT. 1227, 89 L. Ed. 2d 337(1986). THE ELEMENTS OF A FALSE ARREST CLAIM ARE (1) A DEFENDANT INTENDED TO CONFINE THE PLAINTIFF. (2) PLAINTIFF WAS CONSCIOUS OF THE CONFINEMENT AND DID NOT CONSENT TO IT AND (3) THE CONFINEMENT WAS NOT OTHERWISE PRIVILEGED. THE DEFENDANT IRRIZARRI, BASED HIS PROBABLE CAUSE ISSUE'S ON THE FACT THAT HE HEARD SCREAMS COMING FROM THE HALLWAY, AND CAME OUT TO INVESTIGATE THEM. UPON OPENING HIS DOOR HE SEEN THE PLAINTIFF WALKING DOWN THE STAIR'S. AT KNOW TIME DID HE STATE THE PLAINTIFF HELD A KNIFE IN HIS HAND'S, UPON FIRST VIEWING THE PLAINTIFF, COMING DOWN THE STEP. WHICH WOULD CAUSE HIM TO BELIEVE THE PLAINTIFF WAS THE CAUSE FOR THE SCREAM'S IN THE FIRST INSTINCE, SO HOW COULD HE HAVE POSSESSED A KNIFE IN THE COURSE OF TROTTING TO THE DOOR, WHEN THE DEFENDANT NEVER STATED HE SEEN THE PLAINTIFF PULL OUT THE KNIFE WHILE TROTTING TO THE DOOR, WHICH WAS ONLY DONE AFTER IRRIZARRI CAME TOWARD THE PLAINTIFF, AND CAUSE THE PLAINTIFF, TO TROT OFF IN THE FIRST PLACE.

THE PLAINTIFF HAS TWO POINTS THAT SHOULD BE CONSIDERED BY THIS COURT
BEFORE A DECISION IS RENDER ON THE PROBABLE CAUSE ISSUE. UPON PLAINTIFF
FIRST ENCOUNTER WITH MS COHAN, THE PLAINTIFF POSSESSED NO KNIFE AT
THAT TIME. WHEN THE PLAINTIFF STARTED ON HIS WAY BACK UP THE STAIR'S
MS. COHAN, STATED THE PLAINTIFF HAD A KNIFE IN HIS HANDS AND MOTIONED
FOR HER TO COME TO HIM. SHE WALK UP TO PLAINTIFF "KICK HIM IN THE
PRIVATE PART" AND PLAINTIFF WENT RUNNING DOWN THE STAIR'S. SHE
THEN RAN UP TO HER APARTMENT, LOCK THE DOOR AND CALLED 911 FOR THE
POLICE. THE DEFENDANT IRRIZARRI, STATED THAT UPON HIS FIRST
ENCOUNTER WITH THE PLAINTIFF, HE WAS WALKING DOWN NOT RUNNING
AND THE PLAINTIFF HAD NO KNIFE IN HIS HAND AT THE TIME. THERE IS
ALSO NO DOCUMENT'S SUBMITTED WHICH STATES AT WHAT POINT THE
DEFENDANT IRRIZARRI SEEN THE PLAINTIFF PULL OUT A KNIFE, AND
HE NEVER STATED THAT THE PLAINTIFF TRIED TO USE THE KNIFE AGAINST
HIM OR THE OTHER TENANT WHO HELP IN THE STRUGGLE WITH THE PLAINTIFF.
(1) THE DEFENDANT IRRIZARRI STATED, TWO TENANT'S CAME RUNNING DOWN
THE STAIRS AND TOLD HIM THAT MS. COHAN, SAID THAT PLAINTIFF TRIED TO
ROB HER. JUST BY REVIEWING MS. COHAN STATMENT, WE CAN DETERMINE
THAT TO BE FALSE, BECOUSE MS. COHAN, NEVER STATED THAT SHE TOLD
ANYBODY, ANYTHING. (2) THE PLAINTIFF WOULD LIKE TO FUCUS THE COURTS
ATTENTION TO THE CHARGES THAT WAS LODGED AGAINST HIM. WHICH HE WAS
INCARCERATED FOR 27 MONTH, AND THE FACT THAT IT TOOK 18 MONTH'S, JUST
TO HAVE THE CHARGES DISMISSED, BECOUSE IN ESSENCE THE PROSECUTION
WOULD NOT HAVE BEEN ABLE TO PROVE THOSE CHARGES WITH ALL THE
PROBABLE CAUSE, IN THE SOUTHERN DISTRICT. IF THIS IS NOT SO, THEN WHY DID
IT TAKE 18 MONTH'S, BEFORE THEY TOOK THE PLAINTIFF TO TRIAL, WHICH IS
ANOTHER ARGUABLE ISSUE THAT SHOULD BE REVIEWED, BEFORE THIS COURT
AND GUARANTEED BY BOTH CONSTITUTION (U.S. CONST. 6TH AND 14TH AMDTS;
SEE DICKEY V. FLORIDA, 398 U.S. 30, 37-38, 90 S. CT. 1564, 26 L. Ed. 2d.
26; SMITH V. HOOEY 393 U.S. 374, 383, 89 S. CT. 575, 21 L. Ed. 2d 607;
KLOPFER V. NORTH CAROLINA 386 U.S. 213, 226, 87 S. CT. 988, 18 L. Ed. 2d. 1)
AND BY STATUE (C.P.L. 30.20 CONSOL. LAWS C. 11-A; CIVIL RIGHTS LAW.
12 CONSOL. LAWS. 6).

THE PLAINTIFF, ALSO ARGUE'S THE FACT THAT UPON BEING ARRESTED, AND SEARCH BY THE DEFENDANT'S, HIS TWO CONTRACT'S WERE CONFISCATED, AND VOUCHERED AS EVIDENCE UNDER VOUCHER NO# D964L13, AND HE WAS NEVER AFFORDED THE OPPORTUNITY TO FORFILL THOSE OBLIGATION DURING, OR AFTER, THE CHARGES WERE DISSMISSED. ONE CONTRACT WAS FOR ONE MILLION DOLLARS, AND THE OTHER CONTRACT WAS FOR ONE POINT THREE MILLION DOLLARS, PLUS RAYALTIES. THE FACT THAT THE PLAINTIFF WAS DENIED ACCESS TO HIS CONTRACT, WHICH HAD NO BEARING'S, TO USE THEM AS EVIDENCE AGAINST THE PLAINTIFF, WAS TO ANY VIEW A UNEXCUABLE VIOIATION OF PLAINTIFF RIGHT'S UNDER THE CONSTITUTION OF THIS STATE. THE PLAINTIFF CLAIM'S OF FOURTh, AND FOURTEENTh AMENDMENT VIOLATION, CONSISTING OF AN UNREASONABLE ARREST, AND A MALICIOUS PROSECUTION BY DEFENDANTS OPERATES AS A CHORNICIE OF THE SPECIFIC INJURIES THAT OCCURRED DURRING THE COURSE OF THE ENTIRE TRANSACTION IN QUESTION. FROM THE MOMENT OF PLAINTIFF'S, FIRST CONTACT WITh THE POLICE, TO THE MOMENT OF DISMISSAL OF THE CHARGE'S THERE WAS A SINGIE SERIES OF INTERLOCKING EVENT WHERE, ACCORDING TO PLAINTIFF WELL — PLEADED THEORY, THE POLICEMEN CONTINUED TO PRESS THEIR PROSECUTION AS PART OF THEIR ORIGINAL UNCONSTITIONAL DESIGN. AS A PRACTICAL MATTER, THE PLAINTIFF CONTENDS THEIR CONTINUING ATTACK UNKNOWINGLY AIDED AND ABETTED BY THE CRIMINAL COURT SYSTEM OF THE STATE, WAS INTENDED AS A DEFENSE AGAINST ANY POSSIBLE CLAIM BY PLAINTIFF OF ILLEGAL ARREST AND THE DENIAL OF DUE PROCESS. THE PRIMARY PUPOSE OF THE CIVIL RIGHTS ACT OF 1871" — WAS TO ENFORCE THE FOURTEENTh AMENDMENT, THROUGH THE IMPOSITION OF CIVIL AND CRIMINAL LIABILITIES ON THOSE WHO DEPRIVED OTHERS OF CONSTITUTIONAlly PROTECTED RIGHTS." NOTE, ACTIONABIliTY OF NEGIIGENCE UNDER SECTION 1983 AND THE EIGHTH AMENDMENT. 127 U. PA. L. REV. 533, 537-8 (1978) SEE AISO MONEll V. DEPARTMENT OF SOCIAL SERVICES. 436 U. S. 658, 683-9, 98 S. CT. 2018, 2033-8, 56 L. Ed. 2d/611 (1978) THERE CAN BE NO DOUBT THAT § I (§1983) OF THE CIVIL RIGHTS ACT, WAS INTENDED TO PROVIDE A REMEDY, TO BE BROADlY CONSTRUED, AGAINST ALL FORMS OF OFFICIAL VIOLATION OF FEDERAlly PROTECTED RIGHTS.

## PROBABLE CAUSE ISSUE'S

THE PLAINTIFF CONTEND'S "WHEN THE DEFENSE OF PROBABLE CAUSE IS BASED UPON CONFLICTING EVIDENCE — FROM WHICH REASONABLE PERSON'S MIGHT DRAW DIFFERENT INFERENCES, THE QUESTION IS FOR THE JURY OR TRIER OF FACT." TEPPERMAN V. N.Y. CITY TRANSIT AUTHORITY. 133 MISC. 2d 788, 508 N.Y. S. 2d 143, 146 (1986)( NIX V. SWEENEY 573 F. 2d 998, 1001 (8TH CIR. (1979). THE EVIDENCE TO SUPPORT PROBABLE CAUSE NEED NOT BE ENOUGH TO SUPPORT A CONVICTION BUT "MUST CONSTITUTE MORE THAN A RUMOR, SUSPICION, OR EVEN A 'STRONG REASON TO SUSPECT.'" UNITED STATES V. FISHER, 702 F. 2d 372, 375 (2J CIR. 1985) QUOTING. HENRY V. UNITED STATES 361 U.S. 98, 101, 80 S CT. 168, 170, 4 L. Ed. 2d 134 (1959); REASONABLE CAUSE TO BELIEVE THAT A PERSON HAS COMMITTED AND OFFENCE" EXISTS UPON "RELIABLE" INFORMATION WHICH COLLECTIVELY, CONVINCE'S A PERSON OF ORDINARY INTELLIGENCE, JUDGMENT, AND EXPERIENCE THAT IT IS REASONABLY LIKELY THAT SUCH OFFENSE(S) WAS COMMITTED AND THAT SUCH PERSON COMMITTED IT. FROM THE STATMENT'S SUBMITTED BY MS. COHAN, AS TO THE FACT THAT SHE RAN UP TO HER APARTMENT AN LOCK HER, THIS COURT CAN FIND THAT IT WAS HIGHLY UNLIKELY THAT SHE COULD HAVE TOLD THE TWO TENANT'S THAT PLAINTIFF TRIED TO ROB HER, ALONG WITH THE FACT THAT SHE HERSELF STATED THAT WAS NOT SO, STATE'S THAT REASONABLE MEN COULD, DIFFER AS TO THESE ISSUE'S OF FACT SUBMITTED BY DEFENDANT IRRIZARRI, AS TO WHAT HE HEARD THE TWO TENANTS STATE ON THAT NIGHT. THERE IS LITTLE SUPPORT IN THE CASE LAW THAT A MERE IDENTIFICATION BY TWO UNKNOWN TENANT'S WHO DID NOT WITNESS THE ALTERCATION BETWEEN MS. COHAN, AND PLAINTIFF OR SEE A CRIME BEING COMMITTED AT THE POINT OF THERE OBSERVATION COULD BE CONSTITUTED AS PROBABLE CAUSE AND A DEFENSE TO A FALSE ARREST SUIT. WHERE THERE IS CASE LAW THEY WERE NOT DECIDED AT SUMMARY JUDGMENT. IF THERE IS SOMETHING MORE TO DEFENDANT IRRIZARRI, SUSPICIONS, IT HAS NOT BEEN STATED AND WHAT HAS BEEN STATED, IS NOT ENOUGH.

## Summary Judgment Regarding Defendant Irrizarri and Lafferty

Summary Judgment is not a Disfavored, Procedural shortcut, but an integral part of the Federal Rules as a whole, Id. When faced with a motion for Summary Judgment, the material before the court "must be viewed in the light most favorable to the (nonmoving) parties." Adickes v. S.H. Kress and Co., 398 U.S. 144, 157, 90 S.CT. 1598, 1608, 26 L. Ed. 2d 142 (1970). The Defendants assert that there is no issue's of facts, upon which Plaintiff can obtain recovery under, any of the claims for relief alleged in the Complaint. "A fact is 'material' and precludes granting of summary judgment if proof of that fact would have the effect of establishing or refuting one of the essential elements of the cause of action or Defense asserted by the partys, and would necessarily affect (the) application of appropriate principles of laws to the rights and obligation of the parties" Kendall v. Hoover Co., 751 F.2d 171, 174 (6Th Cir 1984)(Quoting Black's Law Dictionary 881 6Th Ed. 1979)(Citation omitted). The court must view the evidence in a light most favorable to the Nonmovant as well as draw all the Reasonable inference in the Nonmovant's favor. See United State v. Diebold, inc., 369 U.S. 654, 655, 82 S.CT. 993, 8 L.Ed. 2d 176 (1972); Bender v. Southland Corp., 749 F.2d 1205, 1210-11 (6Th Cir 1984).

In count (1) of the Complaint, Plaintiff alleges Defendant Irrizarri, illegally arrested Him and violated His rights, while Doing so, under the United State Constitution and His civil rights under 42 U.S.C. §1983 by illegal seizure of His person and property, and in the course of such arrest, the use of excessive force was excercuted, and Both Defendants Irrizarri, and Lafferty, Deprived Plaintiff of Liberty and Property, without Due Process of Law. Count (2) alleges that Defendants Lafferty, and Sam Chimon, Deprived Him of emergency medical treatment.

THE PLAINTIFF, IN HIS COMPLAINT AND CROSS MOTION FOR SUMMARY JUDGMENT, AND RESPONSE, DIRECTLY REFUTE THE DEFENDANTS IRRIZARRI, AND LAFFERTY, ALLEGATION'S OF THE EVENTS THAT TRANSPIRED ON THAT NIGHT IN QUESTION, PLUS SUBMITTED DOCUMENTARY PROOF TO SUPPORT EACH AN EVERY CLAIM WITHIN THE COMPLAINT. THE PLAINTIFF SUBMITTED DOCUMENTS TO DEFENDANT'S ATTORNEY WHICH CLEARLY SHOWS THAT DEFENDANT IRRIZARRI, AND LAFFERTY, FALSIFIED THERE ALLEGATION TO COVER UP THE FACT THAT THEY VIOLATED THE PLAINTIFF CONSTITUTIONAL RIGHTS. THE DEFENDANT'S IRRIZARRI, STATED HE PULLED THE PLAINTIFF OUT OF THE TAXI CAB, AND PLACE HIM UP AGAINST A TELEPHONE BOOTH, AND LAFFERTY, STATED WHEN HE ARRIVED AT THE SCENE THE DEFENDANT IRRIZARRI, HELD PLAINTIFF UP AGAINST A TELEPHONE BOOTH, IS JUST THE KIND OF FALSIFYING OF FACTS THAT THE TAXI CAB DRIVER AND THE WOMEN PASSENGER WILL TESTIFIED IS FALSE, AND THAT THEY DID NOT KNOW THAT PLAINTIFF WAS IN POSSESSION OF A WEAPON UNTIL LAFFERTY, SEARCH PLAINTIFF AND DISCOVER THE KNIFE. THE PLAINTIFF ASKED MS. COHAN, WHAT DID THE KNIFE LOOK LIKE THAT PLAINTIFF WAS IN POSSESSION OF, AND SHE STATED "I DON'T KNOW." BUT STATED SHE KEPT HER EYE'S ON THE PLAINTIFF HAND WITH THE KNIFE IN IT THE WHOLE TIME HE CAME TOWARD HER WITH THE KNIFE, WOULD LEAD REASONABLE MINDS TO BELIEVE THE STORY TOLD BY EVERY ONE IN CONNECTION WITH THE ARREST OF PLAINTIFF ON THAT NIGHT, A LONG WITH THE FACT THAT DEFENDANT LAFFERTY, STATED HE DID NOT KNOW A SAM CHIMON, BUT THE PLAINTIFF SENT THE HON. KATZ, A DOCUMENT DATED MAY 4, 1994, WHICH CLEARLY HAS DEFENDANT LAFFERTY, SIGNED TO IT DATED 10-27-90, AN WHICH ALSO SHOW THAT THEY WERE BOTH TOGETHER WHEN THEY DENIED THE PLAINTIFF EMERGENCY MEDICAL TREATMENT. THIS KIND OF FALSIFYING AND DENYING MEDICAL TREATMENT SHOCK, THAT OF ANY COURT, AN REASONABLE PERSON'S AS TO THE CONDUCT OF TWO OFFICERS, WHO WERE SWORN TO UP HOLD, THE LAW, AN TO SEE THAT JUSTICE IS ADMINISTERED. THIS IS THE SAME KIND OF SITUATION

THAT HAS FORCE THE COURTS TO RULE THAT AN OFFICER CAN NOT BE SHIELD FROM LIABILITY, BECOUSE THE POLICE WILL THEN ASSUME THAT THEY HAVE THE GREEN LIGHT TO DO WHATEVER THEY SEE FIT, AN THEN STATE PROBABLE CAUSE TO JUSTIFY THERE ACTION. SEE KING V. MACRI 993 F.2d 294 (2nd CIR. 1993); RAVSOR V. PORT AUTHORITY OF NEW YORK AND NEW JERSEY 768 F.2d 34 (1985); BROADAWAY V. CITY OF NEW YORK 601 F.SUPP. 624 (1985). BECOUSE THEY CARRIE A GUN AN BADGE DOES NOT GIVE THEM THE RIGHT TO VIOLATE A PERSON CONSTITUTIONAL RIGHTS, OR DENY A PERSON DUE PROCESS OR EQUAL PROTECTION OF THE LAW WHICH IS WHAT THE PLAINTIFF STATED IN HIS COMPLAINT, AN BASED ON THOSE FACTS SUBMITTED, REASONABLE MINDS MAY DIFFER. THE PLAINTIFF CONTENDS THAT IN LIGHT OF THESE FACTS AND DOCUMENTS SUBMITTED, AN REVIEWED THAT SUMMARY JUDGMENT BE DENIED AS DEFENDANTS IRRIZARRI, AND SAM CHIMON, AND LAFFERT.

## QUALIFIED IMMUNITY ISSUE'S

THE PLAINTIFF STATE'S THAT, IN THE SECOND CIRCUIT A DEFENDANT IS ONLY ENTITLED TO QUALIFIED IMMUNITY: BY SHOWING THAT "IT WAS NOT CLEAR AT THE TIME OF THE OFFICIAL ACT THAT THE INTEREST ASSERTED BY THE PLAINTIFF, WAS PROTECTED BY A FEDERAL STATUTE, OR THE CONSTITUTION" OR THAT "IT WAS NOT CLEAR AT THE TIME OF THE ACTS AT ISSUE, THAT OBJECTIVELY REASONABLE FOR (THE OFFICIAL) TO BELIEVE THAT HIS ACTS DID NOT VIOLATE (PLAINTIFF) RIGHTS," THIS IS AN OBJECTIVE STANDARD, WHICH PRECLUDES A DEFENDANT RAISING A SUBJECTIVE GOOD FAITH DEFENCE, BY CONTRAST, IT IS INAPPROPRIATE TO PROTECT AN OFFICER'S INPROPER CONDUCT WITH A GRANT OF QUALIFIED IMMUNITY, WHEN THAT CONDUCT IS THE CAUSE OF ARRESTEE'S ACTION, WHICH GAVE RISE TO PROBABLE

CAUSE TO ARREST HIM. SEE RiNAIdi V. HERNANdEZ, 756 F. SUPP III. (S.D N Y. 1990)(LEXiS. GENFEd LiBRARY DiST. FiIE). WHiIE A PLUNGE INTO THE THiCKET OF QUALiFiEd iMMUNiTY iS APT TO BE PAINFUL iN ViEW OF THE OFFiCERS POSiTiON, iT iS NECESSARY, BECOUSE A DiSCRETiONARY FUNCTiONS ARE NOT SHiEIdEd FROM LiABiLiTY FOR CiViL DAMAGES iNSOFAR AS THEiR CONdUCT ViOLATES ESTBLiSHEd STATUTORY, OR CONSTiTTiONAL RiGHTS. OF WHiCH A REASONABLE PERSON WOUId HAVE KNOWN, TO HOId OTHERWiSE WOUId BE TO CONCLUdE THAT EVERY POLiCE OFFiCER MAKiNG A WARRANTLESS ARREST, WiTHOUT PROBABLE CAUSE, COUId BE HEId LiABLE ONIY iF MALiCE WERE DEMONSTRATEd, Good FAiTh And ASSUMPTiON, DO NOT EXTENd THAT FAR. THERE ARE FACTS SUBMiTTEd BY THE PLAiNTiFF iN THiS RECORd TO ESTABLiSH ANYTHiNG MORE THAN THAT THE OFFiCER IRRiZARRi, ERREd iN Good FAiTh, iN ViOLATiNG THE CONSTiTUTiONAL RiGHTS OF LANdY, BY A REViEW OF THE RECORd iN THE LiGHT MOST FAVORABLE TO THE PLAiNTiFF. PROOF OF SUBJECTiVE Good FAiTh, DOES NOT SHiEId AN OFFiCER FROM TORT LiABiLiTY, FOR AN UNLAWFUL ARREST, THOUGH iT MAY MiTiGATE DAMAGES. SiMiIARIY, A DEPRiVATiON OF LiBERTY WiTHOUT "REASONABLE CAUSE" iS A SECTiON 1983 ViOLATiON AS TO WHiCH THE DEFENdANT BEARS THE BURdEN OF PROViNG REASONABLE, And AS THE PLAiNTiFF STATEd BEFORE iN THiS MOTiON, A GOOd FAiTh BELiEF iN THE LEGALiTY OF THE ARREST iS NOT ENOUGH — AT LEAST AT THiS STAGE OF SUPREME COURT DECiSiONMAKiNG — TO ESCAPE SECTiON 1983 LiABiLiTY. SEE McELVEEN V. COUNTY OF PRiNCE WiIIiAM. 725 F. 2d 954, 956-57 (4th CiR.) CERT. dENiEd — U.S. —, 105 S. CT. 88, 83 L. Ed. 2d 35(1984). THE DEFENdANT IRRiZARRi, STATEd iN HiS SUPPORTiNG AFFidAViT, THAT HE ONLY PURSUEd TO STOP THE PLAiNTiFF FROM LEAViNG THE BUiIdiNG BECOUSE, AFTER HE ASK THE PLAiNTiFF TO WAiT THERE UNTiL HE FOUNd OUT, WHAT WAS GOiNG ON, And PLAiNTiFF STATEd FOR, And PROCEEdEd DOWN THE

SING SING

STAIRS, AFTER HIM BECOUSE HE BELIEVE THAT THE PLAINTIFF, WAS THE CAUSE OF THE SCREAMS, BUT THE FACT IS, AN INDIVIDUAL TO WHOM A POLICE OFFICER AddRESSES A QUESTION "HAS A CONSTITUTIONAL RIGHT NOT TO RESPOND AND HE MAY REMAIN SILENT, SPEAK, WAIK, OR RUN AWAY," U.S.C.A. CONST AMEND. 4.5." THE PRIVACY INTEREST OF OUR CITIZENS IS FAR TOO CHERISHED, A RIGHT TO BE ENTRUSTED TO THE OFFICER IN THE FIELD." THAT PRIVACY INTEREST IS PROTECTED BY THE MANDATES OF THE FOURTH AMENDMENT, TO THE UNITED STATES CONSTITUTION AND SECTION 12 OF ARTICLE 1, OF OUR STATE CONST. BOTH OF WHICH, IN IDENTICAL LANGUAGE, STATES: "THE RIGHTS OF THE PEOPLE TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS, AND EFFECTS, AGAINST UNREASONABLE, SEARCH AND SEIZURES, SHALL NOT BE VIOLATED."

WE HAVE NO DIFFICUITY IN CONCLUDING, THAT THE OFFICER'S REQUEST FOR INFORMATION FROM PLAINTIFF WAS JUSTIFIED UNDER THOSE CRITERIA. THERE WAS, THEREFORE, A BASIS FOR QUESTIONING PLAINTIFF, BUT THERE WAS NOTHING THAT MADE PERMISSIBLE ANY GREATER LEVEL OF INTRUSION. THE OFFICER HAD NO INFORMATION THAT A CRIME HAD OCCURED, OR WAS ABOUT TO TAKE PLACE, HAD NOT SEEN PLAINTIFF, DO ANYTHING CRIMINAL, AND WERE CONFRONTED ONLY BY FACTS SUSCEPTIBLE TO THAT OF INNOCENT INTERPRETATION. THE CIRCUMSTANCES WHICH THE DEFENDANT IRRIZARRI, FACED WHEN FIRST ENCOUNTERING THE PLAINTIFF, JUSTIFIED THE INQUIRY MADE AND WOULD HAVE JUSTIFIED THE DEFENDANT IN KEEPING PLAINTIFF, UNDER OBSERVATION, BUT WERE NOT A PREDICATE FOR ANYTHING MORE, NOR CAN THE FAILURE TO STOP OR CO-OPERATE, BY IDENTIFYING ONESEIF, OR ANSWERING QUESTION BE THE PREDICATE FOR AN ARREST, THIS IS BECAUSE THE FAILURE TO ANSWER "CANNOT CONSTITUTE A CRIMINAL ACT." BUT THAT DOES NOT MEAN THAT A POLICE OFFICER, IN FURTHERANCE OF THEIR DUTIES, MAY NOT CONTINUE OBSERVATION, PROVIDED THAT THEY DO SO, UNOBTRUSIVELY, AND DO NOT LIMIT PLAINTIFF'S FREEDOM OF MOVEMENT, BY SO DOING. BUT, WHERE AS HERE, THERE IS NOTHING TO ESTABLISH THAT A CRIME HAS BEEN OR IS BEING

820

COMMITTED, FLIGHT, LIKE REFUSAL TO ANSWER, IS AN INSUFFICIENT BASIS FOR SEIZURE OR FOR THE LIMITED DETENTION THAT IS INVOLVED IN PURSUIT. (BROWN V. TEXAS, 443 U.S. 47, 50, 99 S CT. 2637, 2640, 61 L ED.2d 357, SUPRA; WONG SUN V. UNITED STATES 371 U.S. 471, 83 S.CT. 407, 9 L.Ed. 2d 441: THEREFORE, SUMMARY JUDGMENT AS TO DEFENDANT IRRIZARRI, SHOULD BE DENIED. SUMMARY JUDGEMENT AS TO DEFENDANT LAFFERTY, MOST BE DENIED, DO TO THE FACT THAT HE MADE PRIOR FALSE STATMENT CONCERNING HIS ONLY INVOLVEMENT IN THIS MATTER WAS TRANSPORTING THE PLAINTIFF TO THE 20TH PRECINT, BY THE DOCUMENTS SUBMITTED BY THE PLAINTIFF, TWO FACTS THAT CAN'T BE DENIED IS: (1) THE PLAINTIFF WAS ARRESTED WHILE SITTING IN THE TAXI CAB, WITH TWO OTHER WITNESSES, WAITING FOR THE POLICE TO ARRIVE. (2) HE DENIED THE FACT THAT HE KNEW A SAM CHIMON, OR THAT THEY WERE TOGATHER ON THE NIGHT IN QUESTION, PLUS, THE FACT THAT IRRIZARRI, DID NOT KNOW OR COULD STATE AT THE TIME HE ARRIVED WHAT KIND OF WEAPON HE SEEN THE PLAINTIFF POSSESSED, BEFORE THEY SEARCH HIM, WHICH WAS ALL WITNESS BY THE PASSENGER, AND THE TAXI CAB DRIVER. THE FACT THAT HE DENIED THE PLAINTIFF, EMERGENCY MEDICAL TREATMENT, AN KNEW THAT IT WAS NEEDED BUT, CHOSE TO LOOK THE OTHER WAY, IS A SUFFICIENT REASON FOR HIM TO BE DENIED SUMMARY JUDGMENT.

## SUMMARY JUDGEMENT ISSUE'S AS TO SAM CHIMON

THE PLAINTIFF CONTEND'S THAT, BECOUSE THE U.S. MARSHAL SENT TO DELIVER THE SUMMONS AND COMPLAINTS WAS MISLEAD IN BELIEVING THAT A "SAM CHIMON" DID NOT WORK AT THE 20TH PRECIENT, AND DO TO FACT THAT DEFENDANT LAFFFERTY, FALSELY CLAIMED TO HAVE NOT KNOWN A SAM CHIMON, MAKING MATTER EVEN MORE DIFFERCUIT, THE PLAINTIFF, RESPECTFULLY REQUEST THAT AN EXTENTION OF TIME FOR SERVICE OF THE SUMMONS AND COMPLAINT TO DEFENDANT SAM

CHIMON M<sup>c</sup>CIO, NOW THAT IT IS VERIFIED, THAT HE WORKS AT THE 20Th PRECIENT TO WHICH THE PLAINTIFF ADVISED THE U.S. MARSHAL THAT THE DEFENDANT SAM CHIMON, WORK THERE WHEN HE FIRST SUBMITTED THE MOVING PAPER'S IN THIS MATTER, THE PLAINTIFF SHOULD BE GIVING PERMISSION FOR RE-SERVICE OF THE SUMMON AND COMPLAINT AND RESPECTFULLY HOPE THAT SUCH PERMISSION BE GRANTED, DO TO THE FACT THAT THE PLAINTIFF HAS NOT FAILED TO SERVE THE SUMMON AND COMPLAINT, BUT THAT THE DEFENDANT LAFFERTY, AND THE 20Th PRECIENT, FALSELY ADVISE THE U.S. MARSHAL AND All PARTYS INVOLVED, THAT KNOW SAM CHIMON, WORK THERE, AND PLAINTIFF HAD NO OTHER MEANS TO CONTACT THE DEFENDANT CHIMON. HE SHOULD BE GRANTED PERMISSION TO SERVE THE DEFENDANT SAM CHIMON M<sup>c</sup>CIO, WITH A SUMMON'S, AND COMPLAINT.

## CONCLUSION

THE PLAINTIFF REQUESTS FOR ALL THE REASONS SET FORTH, ABOVE, RESPECTFULLY RECOMMEND THAT PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT BE GRANTED, AND THE MOTION FOR SUMMARY JUDGMENT SUBMITTED BY DEFENDANT'S IRRIZARRI, AND LAFFERTY, BE DENIED AND THAT ACTION BE ALOUD TO PROCEED, AND THE PLAINTEFF REQUEST TO RE-SUBMIT A SUMMON'S, AND COMPLAINT, TO DEFENDANT SAM CHIMON M<sup>c</sup>CIO, BE GRANTED, DO TO THE FACTS EXPRESS BY THE PLAINTIFF, AND THAT A FUll REVIEW OF All THE PLAINTIFF'S DOCUMENTS SUBMITTED TO THE DEFENDANT'S ATTORNEY BE RENDER PERTAINING TO ISSUE'S OF FACT, BECOUSE THE PLAINTIFF BELIEVES THAT THE HON. KATZ HAVE BEEN MISLEAD BY THIER NON-

822

SUBMITTING OF MATERIAL FACT, WHICH WAS FORWARDED BY THE PLAINTIFF TO THE DEFENDANT'S ATTORNEY. THE PLAINTIFF ON THE 20th DAY OF SEPTEMBER. 1993. SUBMITTED A MOTION FOR DEFAULT AND A MOTION FOR A PRETRIAL CONFERENCE, WHICH WAS DENIED WITH LEAVE TO RE-SUBMIT AT A LATER DATE. PLAINTIFF REQUEST THAT HE BE GRANTED A PRETRIAL CONFERENCE, SO THAT FURTHER FINDING MAY BE MADE ON DISCOVERY, OF MATERIAL IN THE DEFENDANTS POSSESSION, WHICH IS MATERIAL FACT, AN SEEK THE COURT PERMISSION TO DO SO.

I DAN LANDY, BEING DULY SWORN. DEPOSES AND SAYS: THAT I HAVE PLACE COPYS OF THE AFFIDAVIT, ON THE 25th DAY OF AUGUST. 1994, IN THE MAILBOX LOCATED AT SING-SING CORR. FACILITY. 354 HUNTER STREET. OSSINING, NEW YORK, 10562-5442, AND A COPY OF SAID SWORN AFFIDAVIT WAS SENT TO THE HON. KIMBA M. WOOD, AND CLERK OF THE COURT. UNITED STATES DISTRICT COURTHOUSE, FOLEY SQUARE N.Y. N.Y. AND TO PETER D. WINEBRAKE, ASSIST. CORP. COUNSEL, NEW YORK LAW DEPARTMENT, OFFICE OF THE CORPORATION COUNSEL, 100 CHURCH STREET N.Y. N.Y.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. SIGNED THIS 25th DAY OF AUGUST. 1994.

SWORN TO BEFORE ME THIS 25th DAY OF AUGUST, 1994.

JODI FERNANDES
Notary Public, State of New York
Qualified in Dutchess Co. No. 01FE5020101
Commission Expires November 8, 1995

RESPECTFULLY SUBMITTED

DAN LANDY
PRO-SE
94A4865
SING-SING CORR. FACILITY
354 HUNTER STREET
OSSINING, NEW YORK, 10562.
5442.