**Andrew FORD, Plaintiff,**

v.

**Scott RETTER, et al., Defendants.**

No. 3:92CV7436.

United States District Court, N.D. Ohio, W.D.

Oct. 6, 1993.

Andrew L. Ford, Jr., pro se.

Willis P. Jones, Jones & Bahret, Toledo, OH, for Scott Retter.

Donald E. Theis, Baran, Piper, Tarkowsky & Fitzgerald, Toledo, OH, Ronald J. Mayle, Office of the Pros. Atty., Fremont, OH, for Scott Ickes.

## OPINION AND ORDER

JOHN W. POTTER, Senior District Judge:

This matter is before the Court on defendant Retter's motion for summary judgment, plaintiff's opposition, defendant's reply, and plaintiff's response.[1] Defendant's motion asserts the privilege of qualified immunity which, in the absence of a material factual dispute, is decided by the Court as a question of law. In addition, defendant Ickes has filed a second motion for summary judgment, and the Court has received plaintiff's opposition.

Plaintiff asserts that his Fourth Amendment rights were violated when defendant Retter, a Fremont, Ohio police officer, during the course of an arrest, used unreasonable force when he threw plaintiff to the floor re-injuring his right ring finger. Defendant Retter denies this allegation, but asks the Court, for the purpose of this motion, to assume plaintiff's account of the facts is true.

The following narrative is derived from the transcript of plaintiff's deposition: Plaintiff was in the bathroom of his room in the Double A Motel. The bathroom door was slightly open. The door to his motel room was closed, but not locked. He heard the door open. He then heard an officer, whom he identified as defendant Retter, order him out. Plaintiff did not answer Retter's initial order, and after an indeterminate period of time he heard Retter say that if he didn't come out, he was going to call for the dog. After hearing that, plaintiff said, "I'm coming out." Retter told plaintiff to put his hands out of the door where the officer could see them and he complied. Retter then approached plaintiff with his gun drawn, observed plaintiff and holstered his weapon. While plaintiff's hands were extended, Retter grabbed his left hand, kicked his left ankle in order to trip him and threw plaintiff to the

ground. Plaintiff fell against his right hand when he tried to break his fall, at which point he felt his knuckle snap. Plaintiff had earlier fractured this same knuckle playing basketball. While laying on the ground and prior to being handcuffed, plaintiff screamed that his hand was broken. Plaintiff was then placed in a police cruiser and transported to the jail. During that time, he asked Retter to take him to the hospital to get his hand checked out.

Defendant Retter, in his motion for summary judgment, asserts the defense of qualified immunity. The Supreme Court has recently provided guidance for the application of the doctrine of qualified immunity.

> In *Harlow* we said that "[u]ntil this *threshold* immunity question is resolved, discovery should not be allowed." *Harlow* [v. *Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)] (emphasis added). A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

*Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1989).

The Court clarified the analytical framework that must be followed in an action alleging a violation of a constitutionally protected right when the defendant asserts a defense of qualified immunity. *Siegert* instructs that a prerequisite to the application of qualified immunity is a scrutinization of the plaintiff's claim.

---

1. Although plaintiff's response was filed without leave, the Court has reviewed the document.

We granted certiorari in this case to determine whether the United States Court of Appeals for the District of Columbia Circuit properly directed dismissal of petitioner's *Bivens* claim on the grounds that he had not overcome respondent's claim of qualified immunity. The Court of Appeals relied on its "heightened pleading standard," but we hold that petitioner's claim failed at an analytically earlier stage of the inquiry into qualified immunity: his allegations, even if accepted as true, did not state a claim for violation of any rights secured to him under the United States Constitution.

*Siegert*, 500 U.S. at ——, 111 S.Ct. at 1791.

■ This threshold determination, then, requires the Court to assess whether plaintiff has alleged a violation of a constitutional right. The Court finds that the Fourth Amendment provides plaintiff's only colorable constitutional claim.

This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person. We hold that such claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.

*Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989). *Graham* teaches that in evaluating objective reasonableness the Court must look at (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.* at 396, 109 S.Ct. at 1872.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather

than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Id.* at 396–97, 109 S.Ct. at 1872.

■ Assuming for the purposes of this motion that plaintiff's allegations are true, the Court finds that no jury could conclude that defendant Retter's conduct violated the standard set forth above and that, as a matter of law, plaintiff has failed to establish a violation of the Fourth Amendment. Applying the *Siegert* analysis, it is therefore unnecessary to sail into the murky waters[2] surrounding the application of the qualified immunity defense to a claim of excessive force. *See, e.g., Devine v. Pickering*, No. 91–5950/5961, 1992 WL 70188, 1992 U.S.App. LEXIS 7160 (6th Cir.1992) ("[W]e have held that the defense of qualified immunity ordinarily may not be raised against a claim of excessive force, *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir.1988)." *Id.* at n. 5); *but see, Vreeland v. Townsend*, 991 F.2d 797 (6th Cir.1993) ("Vreeland claims that the deputies used excessive force in effectuating his arrest.... The deputies are clearly entitled to qualified immunity."); *Jones v. City of Upper Arlington*, 986 F.2d 1421 (6th Cir.1993); *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir.1993).

These cases lead the Court to conclude that the distinction between the defense of qualified immunity and the substantive law of

---

**2.** As Judge Sam Bell perspicaciously observed:
It thus appears that, pursuant to *Anderson* [*v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)] and its Sixth Circuit progeny, the two-pronged inquiry is in effect a single one, inasmuch as a delineation of the clearly established right in a "particularize" sense necessitates an examination of the facts

involving the specific conduct of the defendant official and the reasonableness thereof. It remains for the Supreme Court or our circuit to determine whether this is, in fact, the proper focus of the qualified immunity doctrine. *Pesek v. City of Brunswick*, 794 F.Supp. 768, 795 at n. 14 (N.D.Ohio 1992).

an excessive force claim have become blurred. As this Court has previously explained, "the determination of qualified immunity turns on the same objective reasonableness standard that the claim of excessive force turns on...." *Jackson v. Hoylman,* 3:89CV7208 at p. 5 (N.D.Ohio December 18, 1989), *affirmed,* 933 F.2d 401, 402 (6th Cir. 1991).[3] As Judge Suhrheinrich has observed:

> I believe generally ... that qualified immunity is not available in excessive force cases....
>
> It seems to this writer that qualified immunity has no relevance unless there is excessive force, for if there is no excessive force, the officer acted in an objectively reasonable manner under the circumstances and there is no constitutional violation. It also seems that once you have determined the need for the defense of [qualified immunity], ... as a matter of law ... the officer has acted unreasonably ... and has violated clearly established law.

*Yates v. City of Cleveland,* 941 F.2d 444, 450 (6th Cir.1991) (Suhrheinrich, J., concurring).

Furthermore, assuming the qualified immunity defense exists in an excessive force case, there has, historically, been some confusion as to the role of the judge and the role of the jury in its application. *See Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). As Professor Blum explains:

> When historical facts material to the issue of qualified immunity remain in dispute, summary judgment is inappropriate and a jury should decide those facts. It is important to understand that a defendant does not lose his or her immunity simply because the qualified immunity issue cannot be disposed of on summary judgment. If the qualified immunity issue is not resolved at the summary judgment stage, it is subject to disposition during trial, on a directed verdict motion, or even after trial on a motion for a judgment notwithstanding the verdict. When factual issues remain for the jury, the best way to accomplish jury resolution of the facts while maintaining the court's control over the legal question of qualified immunity is to submit special interrogatories to the jury that will provide answers to the facts dispositive of the immunity defense.

Karen M. Blum, *Qualified Immunity: A User's Manual,* 26 Ind.L.Rev. 187, 209 (1993) (footnotes omitted).

As the Court has observed, plaintiff's claim against defendant Retter fails at an earlier point in the analytical framework. Plaintiff failed to satisfy the threshold requirement of *Siegert* and, his claim will be dismissed on that basis, leaving for another day the tortuous task of applying the doctrine of qualified immunity to an excessive force claim.

■ Defendant Ickes, who was previously granted partial summary judgment, again moves for summary judgment on the administrative segregation/due process claim, plaintiff's only remaining cause of action. As noted in the March 18, 1993 Order, the Court was at that time unable to determine to what, if any, due process rights plaintiff was entitled. Under Ohio Administrative Code 5120:1–8–15, which governs administrative segregation, the jail administrator retains unfettered discretion to order a prisoner segregated if it is in the "best interest of the prisoner, staff, or the safe, secure operation of the facility." 5120:1–8–15(A)(5). "Prison-

---

3. The Court acknowledges the fine work of Professor Karen M. Blum. In her article, *Qualified Immunity: A User's Manual,* 26 Ind.L.Rev. 187 (1993), Professor Blum provides a practical and insightful discourse on the qualified immunity doctrine and the difficulty with which it is applied to Section 1983 actions.

Although *Anderson* makes it clear that qualified immunity is available as a defense to a Fourth Amendment claim of an unreasonable search, *Graham* leaves open the question of whether qualified immunity would apply in the excessive force case. Because the Fourth Amendment excessive force inquiry is governed by the same "objective reasonableness" standard as the qualified immunity inquiry, a number of courts and commentators have suggested that the qualified immunity defense is redundant in this context and does not apply. Those adhering to this view would frame the question on the merits and the qualified immunity question in the same way: was the officer's conduct objectively reasonable given the totality of the circumstances?

*Id.* at 219–220 (footnotes omitted).

ers who disagree with the administrative segregation decision shall be provided an opportunity to express their views to the jail administrator who shall then review the decision." 5120:1–8–15(D). There is ample evidence in the record to justify plaintiff's segregation, and defendant Ickes provided plaintiff with the minimal due process required by sending him the January 28, 1992 letter which explained his change of status and indicated that his situation would be reviewed weekly.

■ The Court finds that this OAC section creates, if any, the barest elements of a due process right subsequent to segregation. Such due process rights were not violated by defendant Ickes.

The Court hereby certifies pursuant to 28 U.S.C. § 1915(a) that an appeal of this Order cannot be made in good faith.[4]

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendant Retter's motion for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that defendant Ickes' motion for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that this case be, and hereby is, DISMISSED.

---

4. Section 1915(a) provides, in pertinent part: "An appeal may not be taken forma pauperis if the trial court certifies in writing that it is not taken in good faith."