**Mark L. BORDAS, Plaintiff,**

v.

**WASHTENAW COUNTY, Washtenaw County Sheriff Ronald Schebil, Marlene Ralph, Steven Armstrong, Michael Hellman, Joon Hur and Matthew Berchert, Defendants.**

No. Civ.A. 97–40074.

United States District Court,
E.D. Michigan,
Southern Division.

April 2, 1998.

---

Thomas R. Present, Bendure & Thomas, Detroit, MI, for Plaintiff.

Ian J. Reach, Reach & Hollenshead, Ann Arbor, MI, for Defendants.

### *MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Before the court is a renewed motion for summary judgment by defendants, Marlene Ralph, Steven Armstrong, Michael Hellman, Joon Hur and Matthew Berchert, a group of Washtenaw County sheriff's deputies. On December 12, 1997, this court entered an order granting in part and denying in part defendants' motion to dismiss and/or for summary judgment. As a part of that order, this court dismissed all plaintiff's claims against defendants, Washtenaw County and Washtenaw County Sheriff Ronald Schebil. This court also dismissed all plaintiff's claims against the sheriff's deputies with the exception of plaintiff's claims that the deputies violated his rights under the Fourth Amendment. The sheriff's deputies now renew their motion for summary judgment on plaintiff's Fourth Amendment claims. Pursuant to Local Rule 7.1(e)(2), this court has determined that oral argument will not significantly aid in the disposition of this motion. For the reasons set forth below, this court will deny defendants' renewed motion for summary judgment.

### Factual Background

As this court noted in its December 12, 1997 order, the facts in this case are in some dispute. In the interest of clarity, this court will reiterate the factual background contained in the December 12, 1997 order.

On April 11, 1996, Washtenaw County Sheriff's Deputy Marlene Ralph was engaged in a routine traffic stop when she witnessed a vehicle driven by plaintiff, Mark Bordas, proceed past her. Plaintiff claims to have been driving between 25–35 miles an hour. Deputy Ralph, however, believed that plaintiff was speeding, and hurried to her vehicle and attempted to follow plaintiff. Deputy Ralph activated her emergency lights and siren, but plaintiff did not pull over. Plaintiff then pulled into the driveway of his home on McKean Road. Upon exiting his vehicle, plaintiff hurried through an open garage door into the house, leaving his vehicle door ajar with the engine running.

Deputy Ralph called by radio for backup and waited outside the house. Deputy Ralph claims that she was concerned for the safety of the inhabitants of the house, not knowing

if plaintiff lived there or if plaintiff was armed. Shortly thereafter, four other Washtenaw County sheriff's deputies arrived on the scene.[1] The deputies announced themselves as the "sheriff's department" and knocked repeatedly on the door. Plaintiff claims that the deputies were banging on the door with such force that the house was shaking. Plaintiff did not come to the door because he claims to have been fearful of the officers. Subsequently, the officers entered the house and discovered plaintiff in a second floor hallway.

After Deputy Ralph identified plaintiff as the driver of the vehicle, plaintiff was arrested and handcuffed. This happened apparently without incident. However, as the deputies led plaintiff out of the house, plaintiff apparently yelled at some of the officers to "get off [his] carpet." At this moment, one of the officers holding plaintiff lost his balance, and believing that it was due to resistance by plaintiff, yelled out to the other officers to "get him." Plaintiff alleges that the officers then threw him against a table, injuring his elbow, forcibly restrained him on the floor and thrust his head against the ground. The officers then allegedly led plaintiff out of the house and threw him off of the front porch.

When the plaintiff arrived at the police station, he was asked if he needed medical attention and he answered in the negative. Plaintiff was released from jail at approximately seven a.m. on the same day. At about 4:30 p.m. that day, plaintiff presented himself to the hospital complaining of pain. Plaintiff sustained injuries to his arm, clavicle and neck.

On November 21, 1996, plaintiff was found guilty of fleeing and eluding a police officer. On April 1, 1997, plaintiff filed his complaint in this action. On September 19, 1997, defendants filed a motion to dismiss and/or for summary judgment. This court granted the motion in part, and denied it in part, such that the only claims remaining were plaintiff's claims that the sheriff's deputies had violated his rights under the Fourth Amend-

ment. On February 13, 1998, after the close of discovery, the sheriff's deputies filed the instant renewed motion for summary judgment on the Fourth Amendment claims.

**Discussion**

**1. Standard for summary judgment pursuant to Rule 56**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994) A dispute over a material

---

1. The other officers to arrive on the scene were defendants, Steven Armstrong, Michael Hellman, Joon Hur and Matthew Berchert.

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### 2. Analysis

As this court noted in its December 12, 1997 order, plaintiff has alleged two separate claims under the Fourth Amendment. First, plaintiff has alleged that the deputies engaged in an unreasonable search of his dwelling by entering his house without a warrant and in the absence of any exigent circumstances. Second, plaintiff alleges that the deputies used excessive force in effecting his arrest. Each of these claims will be addressed in turn.

### a. Qualified immunity

The sheriff's deputies continue to claim qualified immunity, and this court must address the issue as a threshold question to liability.

Government officials who perform discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A claim of qualified immunity depends on whether the defendant's conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Id.* at 638–40; *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

To defeat a motion for summary judgment based on a claim of qualified immunity in the Sixth Circuit, a plaintiff must establish two things. First, the allegations must state a claim of the violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law. *See Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994).

With respect to the first element, the Sixth Circuit has noted that "[i]t is well settled that '[a]bsent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search.'" *United States v. Johnson,* 22 F.3d 674, 679–80 (6th Cir.1994) (quoting *United States v. Morgan,* 743 F.2d 1158, 1161 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985)); *see also Russo v. City of Cincinnati,* 953 F.2d 1036, 1043 (6th Cir.1992). Moreover, as held by the Sixth Circuit in *Adams,* the right to be free from the use of excessive force under the Fourth Amendment is also a clearly established right. *See id.* at 386–87 (citing *Graham v. Connor,* 490 U.S. 386, 392–93, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Once

plaintiff clears this first hurdle, the issue is whether "plaintiff has alleged specific facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of these clearly established constitutional rights." *Id.* at 387.

At this point, this court notes that the requirement to overcome a motion for summary judgment based on a claim of qualified immunity and the requirement to overcome a motion for summary judgment with respect to the underlying Fourth Amendment violation merge. That is, in both instances, plaintiff is required to come forth with evidence sufficient to create a genuine issue of material fact as to whether the officers' conduct was objectively unreasonable under the circumstances. *See Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988) (noting that a summary judgment based on a qualified immunity defense is not appropriate in a § 1983 action "if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns").

#### b. The reasonableness of the entry into the house

■ In the December 12, 1997 order, this court held that there is a genuine issue of material fact as to whether the warrantless entry of plaintiff's house by the officers was reasonable under the circumstances of this case. This court noted that if the sheriff's deputies were aware that the car Deputy Ralph had pursued was registered to the address at which the officers found themselves, then it would be unreasonable for them to claim that exigent circumstances justified a warrantless entry of the premises to effect a misdemeanor arrest. Moreover, this court found that the information the officers possessed at least arguably suggested that they were aware that the operator of the vehicle lived at that house.

In support of their renewed motion for summary judgment, the deputies largely rehash the arguments they submitted in the first motion for summary judgment. Specifically, the deputies assert that the evidence in this case supports an inference that Deputy Ralph believed exigent circumstances existed at the time she chose to enter the house, and

that her belief was objectively reasonable under the circumstances. As the Supreme Court noted in *Anderson,* 483 U.S. at 641, "the relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] warrantless search[ ] to be lawful, in the light of clearly established law and the information the searching officers possessed." Defendants submit a substantial amount of Deputy Ralph's testimony in the underlying criminal trial related to these events as support for their claim that the deputies did not know at the time of the incident that the driver of the automobile Deputy Ralph had followed lived at that address. However, this court remains convinced that there is a genuine issue of material fact as to the reasonableness of the deputies' belief that exigent circumstances were present in this case. Therefore, this court finds that summary judgment is not appropriate.

It is clear that Deputy Ralph was aware that the car she followed was registered to a Mark Bordas at 10337 McKean Road, and that she was aware at the time of the incident that she was located at an address on McKean Road. Moreover, Deputy Ralph testified:

I asked ... dispatch to see if they could locate a number from the information that they got from the plate or whatnot. To see if they could call *the residence that we were at.* And they advised that there was no answer on the telephone. And I could hear the telephone ringing at that point, too, but nobody answered.

(Trial test. of Dep. Ralph, November 21, 1996 at 56–57 (emphasis added).) This testimony seems to indicate that Deputy Ralph saw a connection between the automobile and the residence. It also indicates that Deputy Ralph was aware that at the same time her dispatcher was placing a call to the phone number listed for 10337 McKean Road, the phone inside the house to which Deputy Ralph had followed plaintiff was ringing. Under these circumstances, this court finds that there is a genuine issue of material fact as to whether it was objectively reasonable for the officers to enter plaintiff's home without a warrant to effect a misdemeanor arrest.

The Deputies also cite to *Gardner v. Township of Kalamazoo,* No. 96–CV–75, 1997 U.S.Dist. LEXIS 6871 (W.D.Mich. April 9, 1997), as authority for their claim that the warrantless entry in this case was reasonable. In *Gardner,* plaintiffs sued a police officer who entered their private home without a warrant to arrest a suspect who had given false information during a routine traffic stop earlier in the evening. The court held that the officer's actions were objectively reasonable under the circumstances, and the court granted summary judgment in favor of the officer. The deputies in this case argue that *Gardner* compels this court to grant summary judgment in their favor. However, *Gardner* is distinguishable from this case in several important respects. In *Gardner:*

> [The officer] stepped into the entry way of the home, quickly arrested the individual and removed him from the home. There [was] no allegation that harm was done to anyone or the property in the home. No search or protective sweep was conducted within the home. Finally, the police officer's suspicions were confirmed because there were warrants out for the arrest of the individual who had been removed from the home.

*Id.* at *15. In the instant case, no fewer than five officers entered plaintiff's home and proceeded beyond the threshold to the second floor of the house. Moreover, there clearly are allegations in this case that the officers did harm plaintiff. Finally, there was never any evidence that there were any warrants out for plaintiff's arrest. Accordingly, this court finds *Gardner* inapposite.

The deputies also cite *United States v. Jones,* 121 F.3d 710 (6th Cir.1997), for the proposition that plaintiff tacitly consented to the officers' entry of the home, obviating the need for a warrant. The deputies claim that a voice from inside the house repeatedly said "I'm coming" and "we're up here." Therefore, the deputies claim that plaintiff tacitly consented to the entry of his dwelling. However, even accepting that someone inside the house said "I'm coming" and "we're up here," this court nonetheless finds that there was no tacit consent to entry of the dwelling in this case. In Jones, the officers approached a hotel room in which they suspected drug activity was taking place. After the officers knocked on the door and identified themselves, an occupant of the room opened the door, left it ajar, walked back into the room and sat down on a bed. Under those circumstances, the court found that the occupants of the room had tacitly consented to a warrantless entry of the hotel room by the officers. The circumstances in this case are clearly distinguishable. Neither plaintiff nor his nephew ever came to the door and opened it. Nor did they yell to the officers to "come in." At most, someone indicated that he would be coming to the door shortly. Under those circumstances, this court finds that there was no tacit consent for a warrantless entry of the dwelling by the sheriff's deputies.

Accordingly, for the reasons set forth above, this court finds that there remains a genuine issue of material fact as to whether the warrantless entry of plaintiff's dwelling to effect a misdemeanor arrest was reasonable in light of clearly established law and the information the searching officers possessed. Therefore, this court finds that the sheriff's deputies are not entitled to summary judgment on that part of plaintiff's claims under the Fourth Amendment.

### c. Excessive Force

█ In the December 12, 1997 order, this court noted that the issue of excessive force in this case is more straightforward. Plaintiff claims that he did not resist the officers at all, yet he was thrown against a table and to the ground, knelt upon while his head was thrust against the floor, and thrown off of his front porch. Taking plaintiff's allegations as true, it is clearly unreasonable for the officers to have used that degree of force to effect a misdemeanor arrest in the plaintiff's own home. This court found that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether these defendants in fact committed a violation of clearly established law, as required to overcome both a claim of qualified immunity and the underlying claim for summary judgment. *See Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994).

In their renewed motion for summary judgment, the deputies make a number of factual claims and then assert that the version of the events given by plaintiff and his nephew is "not only inaccurate, but impossible." (Def. mot. br. at 13.) Specifically, the deputies point to their own affidavits in which they assert that no excessive force was used. The deputies claim that plaintiff has brought forth no evidence to rebut these affidavits. In addition, the deputies point to various evidence which suggests that plaintiff was not injured to the degree he has claimed. The deputies assert that, in light of this evidence, plaintiff has failed to establish a genuine issue of material fact.

However, this court finds that plaintiff has brought forth more than enough evidence to establish a genuine issue of material fact as to the reasonableness of the amount of force the officers used in effecting the arrest. Plaintiff has claimed under oath and subject to cross-examination that he did not resist the officers and that he gave them no reason to think that he did. This testimony, and that of plaintiff's nephew adequately raises a genuine issue of fact in the face of defendants' affidavits. Moreover, this court notes that plaintiff has submitted medical records which suggest he did suffer some injury. It is not for this court to determine the level of damages plaintiff suffered as a result of this incident. While a jury may ultimately find that plaintiff suffered no injuries as a result of the deputies' conduct, this court finds that plaintiff has at least met his burden to establish a genuine issue of material fact as to whether the officers used excessive force, and whether that use of force resulted in injuries to plaintiff.

Nor does this court find persuasive the authority cited by defendants for the proposition that summary judgment is proper in this case as to the claims of excessive force. In *Nicholson v. Kent County Sheriff's Dept.,* 839 F.Supp. 508 (W.D.Mich.1993), the court was faced with an excessive force claim brought by a plaintiff who suffered from a bipolar chemical imbalance which caused him to become grossly agitated. In that case, the plaintiff used his hands and head to smash steel reinforced glass windows. The court found that the officer's use of force to restrain plaintiff was clearly reasonable under those circumstances, and so the court granted summary judgment in favor of the officers. Even on the deputies' view of the circumstances in this case, plaintiff's conduct is clearly not analogous to the conduct of the plaintiff in *Nicholson* . Accordingly, this court finds *Nicholson* inapposite. The deputies also cite to *Ford v. Retter,* 840 F.Supp. 489, 490–92 (N.D.Ohio 1993), in which the court granted summary judgment in favor of an officer on an excessive force claim where the officer tripped a suspect, fracturing the suspect's knuckle. However, the court in *Ford* merely asserted, without explanation, that the plaintiff's claims, even if taken as true, did not state a claim for a violation of the Fourth Amendment. In this case, plaintiff alleges that, though he did not resist these officers at all, he was thrown against a table and to the ground and thrown off of his front porch. This court finds that plaintiff clearly has alleged a violation of his right to be free from the excessive use of force under the Fourth Amendment. Moreover, plaintiff has established a genuine issue of fact as to whether defendants did, in fact, violate his constitutional rights. Therefore this court finds defendants' reliance on *Ford* to be misplaced.

For the reasons set forth above, this court will deny defendants' motion for summary judgment as to plaintiff's claims that the sheriff's deputies used excessive force in violation of his rights under the Fourth Amendment.

## Conclusion

Accordingly, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that defendants' renewed motion for summary judgment pursuant to Fed.R.Civ.P. 56 as to the remaining claims under the Fourth Amendment against defendants, Marlene Ralph, Steven Armstrong, Michael Hellman, Joon Hur and Matthew Berchert, is **DENIED. SO ORDERED.**